EL PASO & SOUTHWESTERN RAILROAD COMPANY v. W. D. FOTH.

No. 1783.  Decided November 20, 1907.

**1.—Charge—Master and Servant—Care in Choice of Protective Device.**

Requested instruction specifically submitting, in case of a fireman injured by explosion of the water glass on a locomotive engine, the non-liability of defendant in case it had used ordinary care in choosing between different approved devices for protection of the employee from such danger held improperly refused. (Pp. 143–145.)

**2.—Same.**

The duty of the master to his servant in the choice of appliances is met when he uses ordinary care to select one reasonably safe, without requiring him

to seek for the safest and best, Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 484, distinguished.   (Pp. 144, 145.)

3.—Same.

Consistency of a protective device with the efficient use of the instrument to which it is applied is a proper element to be considered in determining the question of due care in its selection.   (P. 145.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from El Paso County.

Foth sued the railway company and had judgment. It was affirmed on appeal by defendant, who thereupon obtained a writ of error.

The opinion of the Court of Civil Appeals, which is specifically approved except upon one point involved, was as follows:

FLY, ASSOCIATE JUSTICE.—Appellee instituted this suit for damages, alleging that on August 26, 1905, he was in the service of appellant, as a locomotive fireman, and that while he was on a locomotive engaged in his duties as fireman the water glass on the locomotive exploded and destroyed his left eye. It was alleged that the water glass was defective in being too thin to withstand the pressure of water and steam, that it was not properly adjusted, that it had not been inspected and tested and that the glass was not provided with a proper screen or guard so as to hold the glass in case of an explosion.

Appellant answered that it was impossible to protect the water glass so as to prevent explosions and possible injury, that appellee knew this when he entered appellant's service and that the glass was liable to burst and fly to pieces, and so knowing he contiued in appellant's employment and therefore had assumed the risk and was guilty of contributory negligence.

A trial by jury resulted in a verdict and judgment for appellee in the sum of $4,000.

The water glass mentioned in the petition is a tube made of glass ½ or ⅝ of an inch by 10 or 12 inches, and is placed on each locomotive to indicate how much water is in the boiler. The water glass stands straight up in front of the boiler head, in the cab of the engine, and is connected with the water in the boiler by a valve at the top and one at the bottom and through these valves water from the boiler enters the water glass. The water glass that exploded was protected by metal shields with slots or openings in them running the full length of the glass, about ½ an inch wide, there being three of the slots. It was shown that other railroads used a wire shield that went over the glass, the meshes being about ⅛ of an inch in size, making about sixty-four meshes to the square inch. The piece of glass that destroyed appellee's eye could not have passed through the meshes of the screen used by other railroads to protect the water glasses. Appellee while in discharge of his duty as a fireman had his left eye destroyed by the explosion of the water glass. throwing a piece of glass into the eye. If the glass had been properly

protected the injury to appellee would not have occurred. Appellee did not assume the risk arising from the use of the water glass, protected as it was, nor was he guilty of contributory negligence on account of remaining in the service of a company using such appliances.

The Twenty-ninth Legislature passed the following act: "Be it enacted by the Legislature of the State of Texas:

"Section 1. That in any suit against a person, coporation or receiver operating a railroad or street railway for damages for the death or personal injury of an employe or servant, caused by the wrong or negligence of such person, corporation or receiver, that the plea of assumed risk of the deceased or injured employe where the ground of the plea is knowledge or means of knowledge of the defect and danger which caused the injury or death shall not be available in the following cases:

"First. Where such employe had an opportunity before being injured, or killed to inform the employer or a superior entrusted by the employer with the authority to remedy or cause to be remedied the defect, and does notify or cause to be notified the employer or superior thereof within a reasonable time, provided it shall not be necessary to give such information where the employer or such superior thereof already knows of the defect.

"Second. Where a person of ordinary care would have continued in the service with the knowledge of the defect and danger and in such case it shall not be necessary that the servant or employe give notice of the defect as provided in subdivision 1 hereof." Gen. Laws, 1905, p. 386. That act took effect on April 24, 1905, and was therefore in effect when appellee was injured on August 26, 1905.

The effect of that law is to eliminate the plea of assumed risk in any case, where an employe has an opportunity before being injured to notify his employer or a superior given authority to remedy defects of the existence of such defects and does notify such employer or superior within a reasonable time. No notice is necessary when the employer or superior knows of the defect. It also destroys the force of a plea of assumed risk where a person of ordinary care would remain in the service of his employer with knowledge of such defect and danger. Of course the matters as to whether an employe has an opportunity to notify his employer, and does or does not notify him, and as to a person of ordinary care with knowledge of the defect remaining in the service of the employer, are questions of fact to be determined by a jury, and the court very properly submitted those matters to the jury.

The testimony tended to show that the metal shield used by appellant around its water glass was defective in not being so constructed as to minimize the chances for pieces of glass to be driven out by an explosion with such force as to injure the employes whose duties brought them in proximity to it. It was a defect in construction that would clearly come within the purview of the statute of 1905. The evidence established the defect and justified the submission of the question as to whether a person of ordinary care would have remained in the service of appellant when he knew that a defective

water glass was being used and the danger attending its use. The jury was justified by the evidence in finding that there was a defect and that appellee, although he knew of the defect, was justified in remaining in the service of appellant.

There is no antagonism between the proposition, as stated in the charge, that railroad companies are not insurers of the safety of their employes, and the propositions of law contained in the statute hereinbefore copied, and there was nothing in the statement of the different propositions calculated to mislead or confuse a jury.

How the question of whether a person of ordinary care would have remained in the employment of appellant after he knew the manner in which the water glass was equipped, was to be ascertained is not clearly indicated by appellant, but it is insisted that a jury should not have decided it. It had to be decided by someone and being purely a question of fact we know of no other that had the authority, under the law of Texas, to decide it, except a jury. When they determined that issue in the affirmative, as the evidence undoubtedly justified them in doing, the question of assumed risk was removed from the case.

It is argued by appellant that appellee must have been guilty of contributory negligence if he knew of the defects in the water glass, but that does not necessarily follow. If he had not been relieved from the imputation of assuming the risk by the Legislature making the test the conduct of a person of ordinary care, a knowledge of the defects would create the state of assumed risk, but not of contributory negligence. The distinction between the two must be observed or confusion will result in the application of the rules pertaining to the two defenses. When it was proved that seventy-five or eighty persons were using engines on appellant's railroad equipped with water glasses, guarded as was the one that exploded and hurt appellee, it would seem that fact alone would show that persons of ordinary care would use such engines, and justified the jury in eliminating the question of assumed risk from the case. When that defense is removed from the case it does not necessarily follow, because appellee knew of the defects in the water glass that he was guilty of contributory negligence in remaining in the service of his employer. The rules of assumed risk and contributory negligence are dependent on widely separated tests and principles. Entering the employment of one who is known to furnish defective appliances might be assuming the risks arising therefrom, but it is not contributory negligence. The latter is the doing of such act or omission, amounting to a want of ordinary care, as, concurring with some negligent act of the defendant, is the proximate cause of the injury for which redress is sought. There must be some positive act of commission or omission that caused the injury or contributed thereto. To illustrate, if the explosion had been caused by allowing the water to get too low in the boiler and it had been the duty of appellee to keep the water up to the safety mark, he might have been guilty of contributory negligence in failing to perform this duty. Or if he had been working with the water glass at the time and thereby caused the explosion, such act might have been contributory negligence. He was doing nothing of the kind,

but was engaged in the performance of the duty of sweeping the cab when the explosion took place. It is not pretended that the explosion took place on account of any act of commission or omission on his part, but was caused by the inherent power of the hot water or steam. The glass, not being properly guarded, flew out and struck appellee.

Assumed risk refers to a general course of action in connection with the master's way of doing business and the appliances furnished; contributory negligence refers to the question as to whether the servant acted prudently in connection with a certain matter that arose for his consideration at a certain time and place. The first is an intelligent choice, the latter is carelessness.

In the case of Mundle v. Manufacturing Co. (Me.), 30 Atl. Rep., 16, it was said: "Assuming the risks of an employment is one thing and quite a different thing from incurring an injury through contributory negligence." Again in the case of Dempsey v. Sawyer (Me.), 49 Atl. Rep., 1035, it was held: "There is an essential difference between the defense of contributory negligence and the defense of assumption of risk—a difference often obscured, but which should be kept clear in the mind for a correct understanding of the relative rights and duties of master and servant, as to the dangers arising from the use of defective machinery or appliances. Contributory negligence is a breach of the legal duty of due care imposed by law upon the servant, however unwilling or protesting he may be. Assumption of risk is not a duty, but is purely voluntary upon the part of the servant. The risk from the master's breach of duty never rests upon the protesting or unwilling servant. Volens, not *sciens,* is the test."

We conclude that mere knowledge of the defects in the water glass did not constitute contributory negligence. There was no want of ordinary care upon the part of appellee at the time of the explosion and hence he could not have been guilty of contributory negligence. It can not be held that acquiescence with knowledge is contributory negligence. Hesser v. Railway (Ohio), 50 N. E. Rep., 354. As said by Labatt in his work on Master and Servant, p. 906, sec. 353: "The reasons for not inferring negligence, as a matter of law, under such circumstances, are, of course, stronger if it appears that the practice in question was pursued not only by the co-servants of the injured person, but also by servants in other concerns of the same kind as that carried on by his employer." See also Railway v. Moody (Fla.), 24 So. Rep., 148; Railway v. Clark (Ky.), 55 S. W. Rep., 699; St. Louis Cordage Co. v. Miller, 126 Fed. Rep., 503, and Johnson v. Railway, 196 U. S., 1. None of the decisions cited by appellant is in conflict with the propositions hereinbefore expressed.

The rule herein stated is well sustained by the Supreme Court of Texas in the case of Railway v. Kelly, 98 Texas, 123, wherein it is said: "If knowing its condition, Kelly had used the defective hand car without any order of his superior officer to do so, but it appeared that under like circumstances a reasonably prudent man would have made the same use of the car, he could not be charged with contributory negligence, but the charge imposed upon Kelly the duty to show

in addition that he was, at the time, acting under the order of a superior officer in order to exonerate him from the charge of contributory negligence." In this case appellant desired a verdict instructed for it, regardless of whether a reasonably prudent man would have worked on the engine under the circumstances or not. Green v. Cross, 79 Texas, 132.

If the contention made by appellant, that the question of whether an appliance is a reasonably safe one should always be left to railway companies, and should never be inquired into by courts or juries, should be sustained railroad companies could never be held liable for injuries arising from defective appliances furnished to their servants. Whatever may be the attitude of the courts of the United States or other States, such a rule finds no countenance or support in the decisions of Texas. A railroad company can not be heard to justify its negligence in failing to exercise ordinary care in selecting the appliances to be furnished its employes, by a statement that it has the authority to choose its own appliances no matter how defective. The doctrine of the right of the master to carry on his business in his own way may be conceded, but it is not so sacred a right that a court or jury can not inquire into it to ascertain if he has negligently injured his servant. The master may run his business in the way to suit himself, but subject to an inquiry as to whether ordinary care was used.

It was the duty of the railway company to use ordinary care to provide its engines with the best appliances and improvements for the protection of its employes and it was a question of fact as to whether such care was exercised. The final arbiter as to the exercise of such care can not be the master, who of all others would be the most unfit tribunal to decide upon its own care, but must be an impartial jury in a court of law and justice. The evidence in this case shows the wisdom of such a rule, for it clearly appears that a use of the proper means, at the hands of appellant, in screening its water glasses, would have protected its employes from the dangers attendant upon the use of open slotted guards, that practically give no protection against constantly recurring explosions of the glasses. As said by the Supreme Court of the United States in the case of Railway v. McDade, 191 U. S., 64: "Where no necessity exists as in the present case, for the use of dangerous appliances, and where it is a matter requiring only due skill and care to make the appliances safe, there is no reason why an employe should be subjected to dangers wholly unnecessary to the proper operation of the business of the employer."

It was established, by a preponderance of the evidence, that a device for protecting against explosions was in use by other railroads that was much safer than the one used by appellant, and much of the evidence tended to show that such a device was an absolute protection. It appeared that appellant had adopted it on some of its engines, and that it could be substituted for the older device in a few minutes and at a small cost. The failure to adopt the safer and better device raised the issue as to the exercise of ordinary care in the selection of its appliances by appellant, and it was properly submitted to the

jury. This proposition is upheld in Railway v. Carter, 95 Texas, 461, where it was held: "The testimony in this case tended to prove that each of two different kinds of spark-arresters was used by railroad companies and each was considered by experienced railroad men as better than the other, which produced a condition in which it was necessary for the railroad company to make a choice between the two. Under this state of facts, it was the duty of the railroad company to exercise ordinary care—that is, such care as a man of ordinary prudence would exercise under like circumstances to select and use the better of the two, but, having used such care as the law requires, it can not be held that a failure of judgment honestly exercised in an attempt to discharge the duty should render the company liable." It would seem apparent that a metallic screen with very small meshes would afford more protection from an explosion of glass than four upright pieces of metal, perhaps one-half an inch apart. It was the duty of the railway company to use ordinary care to provide its engines with the best approved devices for preventing injuries from the explosion of its water glasses.

We do not conceive that there is any merit in the contention that, as appellee was in the employment of appellant when the act of 1905 went into effect and had assumed, before that, the risks arising from use of the water glass, which was in the same condition at that time as when the injury was inflicted, the law did not apply to him. When the statute went into effect in April, 1905, the law as to assumed risks was changed according to the terms of that act and had the same application to appellee that it did to those who might accept employment thereafter. Coley v. Railway (N. C.), 57 L. R. A., 817.

We think there can be no doubt that the defect referred to in the statute is applicable as well to defects in the original construction, as to those arising from a failure to keep the appliances up to the standard of safety. This conception of the law is amply sustained by cases cited in the notes to the case last above cited, among the number, Railway v. Lamb (Ala.), 26 So. Rep., 969; Ellis v. Pierce (Mass.), 51 N. E. Rep., 974 and Gunn v. Railway (Mass.), 50 N. E. Rep., 1031.

The fifth assignment of error states that "the court erred in refusing to give to the jury defendant's special charge No. 3," and the sixth states that "the court erred in refusing to give defendant's special charge No. 4." For statements under the two assignments reference is made to many pages of evidence copied in the brief under the first, second, third and fourth assignments of error and to certain pages of the transcript. Neither the charges nor their substance are copied in the brief. It is not incumbent upon this court to consider assignments of error under which such statements are made. Haley v. Davidson, 48 Texas, 615. It may be stated, however, that the law as applicable to the facts was given by the court and there was no necessity for other charges, even though they were correct expositions of the law.

The charge is not open to the criticisms contained in the seventh assignment of error. It did not invade the province of the jury and

did not assume that it was negligence in appellant not to guard its water glass with a wire screen. There was evidence to the effect that the glass was not properly guarded and the court did not err in presenting that issue to the jury.

The eighth assignment of error is disposed of by what has been said hereinbefore in the discussion of the questions of assumed risks and contributory negligence. It was not error to submit to the jury the question as to whether a person of ordinary care would have remained in the employment of appellant with a knowledge of the defect in the water glass.

The contention of appellant that, because the guards on their water glasses, or some of them, were the kind "placed upon engines by the Baldwin Manufacturing Co., of Philadelphia," which is asserted to be "the greatest manufacturer of engines in the world," it could not be guilty of negligence in using such guards, can not be sustained. Two of the largest systems of railways in the world had displaced the "Baldwin slotted guard" because it was not deemed a safe device, for the purposes for which it was intended, and even appellant itself had begun the work of displacing it, and was using in its stead a wire screen which witnesses swore was much safer than the ones with the metallic bars. There was evidence to sustain the verdict of the jury.

The Act of 1905 is not "oppressive, arbitrary or unreasonable" nor is it unconstitutional. Similar acts have been in existence in England, Canada and different States of the Union and have been uniformly sustained by the courts of last resort. Similar laws have been sustained also by the Supreme Court of the United States. McGuire v. Railway (Iowa), 108 N. W. Rep., 902; Railway v. Bristol, 151 U. S., 567; Railway v. Ellis, 165 U. S., 158; Railway v. Buffalo Steamer Co., 111 N. Y., 131; People v. Railway, 70 N. Y., 569.

It is true as said by the Court of Appeals of New York in the last cited case: "Railroad corporations hold their property and exercise their functions for the public benefit, and are therefore subject to legislative control. The Legislature which has created them, may regulate the mode in which they shall transact their business, the price which they shall charge for the transportation of freight and passengers, the speed at which they may run their trains, and the way in which they may cross or run upon highways and turnpikes used for public travel. It may make all such regulations as are appropriate to protect the lives of persons carried upon railroads, or passing upon highways crossed by railroads." It could also be added, that the Legislature has the authority to compel the adoption of devices and appliances for the protection of those in the service of railways, can declare that the doctrine of fellow servants shall not apply in cases arising between railways and their employes, and can perforce, alter, change or abolish the law of assumed risks.

In discussing the constitutionality of laws, the mistake is too often made of endeavoring to apply the same rules in the government of natural persons not engaged in public occupations, to the control of creatures of law, whose very existence rests in the hands of the

legislative branch of the government, and which can and must be regulated in a manner that individuals, in pursuit of private occupations, with a due regard to the principles of free government and the rights of personal liberty, can not be regulated. Barring an interference with vested rights, rights of property and the obligations of existing contracts, the Legislature may impose upon private corporations, engaged in serving the public, any additional restriction and burden that the public good may require or render proper and expedient.

The statute of 1905, interferes with no vested right and does not in any manner impair the obligation of contracts, but it is a measure passed, undoubtedly, to better protect the lives and limbs of those who are in the employment of railroads or street railways. It is an exercise of the police power of the State over the creatures that it has by its legislative fiat brought into existence. "This police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State." Cooley's Const. Lim. (7th ed.), 831. The exercise of this police power is the exercise of a power belonging to State sovereignty, reserved and protected by the Constitution of the United States.

The clause of that Constitution which forbids the passage of laws impairing the obligation of contracts, is frequently invoked by private corporations to prevent the legislatures of the States from regulating and controlling them, but it is uniformly held, by Federal and State courts, that they are subject to such regulations from time to time as may be deemed necessary to guard the rights of individuals and other corporations, shield the public health, and protect the safety of life and limb. There is no limit to this police power, except that it must be exercised for the comfort, safety or welfare of society; that it must not destroy any charter privilege nor interfere with any vested right. The State of Texas has not transgressed these bounds in restricting the defense of assumed risk.

The Act of 1905 is not unconstitutional because of unjust discrimination in favor of interurban electric railways, which are not embraced within the terms of the statute. The argument in favor of that position is answered by appellant when it asserts, and produces authorities to sustain its assertion, that an interurban railway is neither a "railroad" or a "street railway," as expressed in the statute. Being of a different class there can be no such thing as discrimination in their favor, for legislation is not discriminatory that applies alike to certain bodies or associations. So if interurban railways are embraced in the general term "railroads," or are "street railways," as used in the statute the law applies to them, but if they belong to a different class or association, railroads and street railways have no more right to complain of their not being included in the law than that automobiles are not included. Campbell v. Cook, 86 Texas, 630; Waters-Pierce Oil Co. v. State, 19 Texas Civ. App., 1

Appellant seeks to attack the validity of the Act of 1905, on the ground that the bill was not read on three several days in the Senate, nor did four-fifths of the Senate vote to suspend the constitu-

tional rule, and refers to the Senate journal to substantiate its contention. It has been held in this State that the journals of the Legislature can not be looked to in order to invalidate a statute signed by the President of the Senate and Speaker of the House and approved by the Governor. Williams v. Taylor, 83 Texas, 667; Ex parte Tipton, 28 Texas App., 438; Blessing v. Galveston, 42 Texas, 641; Day Co. v. State, 68 Texas, 526; Presidio County v. Bank, 20 Texas Civ. App., 511; McLane v. Paschal, 8 Texas Civ. App., 398.

In the decision in the Williams-Taylor cited case, which was rendered by the present Chief Justice of the Supreme Court, it is held: "Our Constitution provides, that after the passage of a bill it shall be signed by the presiding officer of each house in presence of the house; and we are of the opinion that when a bill has been so signed and has been submitted to and approved by the Governor, it was intended that it should afford conclusive evidence that the act had been passed in the manner required by the Constitution. Such being the rule of the common law, we think, in the absence of something in the Constitution expressly showing a contrary intention, it is fair to presume that it was intended that the same rule should prevail in this State. There is no provision of the Constitution indicating in any direct manner such contrary intention; and the fact that it is provided that journals shall be kept and that certain things should be entered therein we think insufficient to show any such purpose." It was further held that a rule permitting the use of the journals to invalidate a statute "would lead to inextricable confusion." The opinion of the Court of Appeals in Ex parte Tipton, cited above, is commended by the court as well as the opinion in The State v. Swift, 10 Nevada, 176. In the Tipton case the following from the Nevada case is copied with approval: "Where an act has been passed by the Legislature, signed by the proper officers of each House, approved by the Governor, and filed in the office of the Secretary of State, it constitutes a record which is conclusive evidence of the passage of the act as enrolled. Neither the journals kept by the Legislature, nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received in order to show that an act of the Legislature, properly enrolled, authenticated, and deposited with the Secretary of State, did not become a law."

Those decisions, we think, express the correct rule upon the subject and their soundness has never been questioned in any decision in this State. It is urged, however, that in the case of Railway v. McGlamory, 92 Texas, 150, it appears that the Supreme Court did look to the journals of the Legislature in determining when a statute went into effect, and therefore by implication overruled its decisions as well as those of other Texas courts on the subject. But there is no force or merit in that position for in the McGlamory case the journals were consulted only to ascertain if two-thirds of both houses had voted to give effect to a statute from date of approval, and that action is in entire accord with expressions in the Williams-Taylor case wherein it is said, in distinguishing it from Ewing v. Duncan, 16 S. W. Rep., 1000: "The signature of the presiding officers and the approval of the Governor attested the passage of the

act, but did not determine that it had taken effect from date of its passage.  There being no method of the attesting the fact, that a bill which purports to take effect from its passage has received the required two-thirds majority, we deemed the journals the best evidence upon the question, and looked to them for that purpose only." It is not contended in this case that the vote was not sufficient for immediate passage of the Act of 1905.

The judgment is affirmed.

*Patterson, Buckler & Woodson,* for plaintiff in error.—The court in its general charge having told the jury only in a general manner that it was the duty of the appellant to use reasonable care to provide the plaintiff with a reasonably safe guard on its water glasses, the appellant had the right to ask, and it was the duty of the court to give, this special charge calling the attention of the jury in this direct and specific manner to this phase of the case.  El Paso Electric Ry. Co. v. Kendall, 38 Texas Civ. App., 221; St. Louis S. W. Ry. Co. v. Arnold, 39 Texas Civ. App., 161; Missouri, K. & T. Ry. v. McGlamory, 89 Texas, 635; Missouri, K. & T. Ry. v. Rogers, 91 Texas, 53; St. Louis, S. W. Ry. v. Casseday, 92 Texas, 526.

*Jno. L. Dyer,* for appellee.—It is error for a court by giving repeated charges on the same issue to emphasize its importance and give it undue prominence.  The matter in the charge given by the court and in the requested instructions presented fully the law applicable to the case.  The special charge was a repetition of matter already charged upon.  Galveston, H. & S. A. Ry. v. Morris, 94 Texas, 509; Highland v. Houston E. & W. T. Ry., 65 S. W. Rep., 650; Kroeger v. Texas & P. Ry. Co., 69 S. W. Rep., 810; Pelfrey v. Texas C. Ry. Co., 73 S. W. Rep., 411; Gulf, C. & S. F. Ry. v. Holt, 70 S. W. Rep., 594; Missouri, K. & T. Ry. v. Walden, 66 S. W. Rep., 584; St. Louis S. W. Ry. v. Byers, 70 S. W. Rep., 560; Texas C. Ry. v. Weideman, 62 S. W. Rep., 810; Houston & T. C. Ry. v Byrd, 61 S. W. Rep., 149.

The court did not err in refusing to give requested charge No. 4, for the reason that it made the use of ordinary care in making the selection depend, not upon the honest difference of opinion as to the safest mode of protecting water glasses, but made it depend upon consistency of efficiency of use.  Missouri K. & T. Ry. Co. v. Carter, 95 Texas, 485.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

Upon all of the questions, save one, the Court of Civil Appeals reached conclusions with which we agree.  (18th Texas Ct. Rep., 610.)  We are of the opinion, however, that the trial court committed error in refusing the fourth special charge requested by the defendant (plaintiff in error) which was as follows:

"If you find from the evidence that at the time of plaintiff's injury, there existed among skillful and competent railroad men, charged with the duty of protecting water glasses on engines, a difference of opinion as to the safest mode of protecting such glasses, consistent

with their efficient use as such, and that the defendant company in the exercise of its best judgment, selected the kind of protection that was upon the engine and around the glass at the time of plaintiff's injury, then the defendant would not be liable to the plaintiff even though the jury may conclude from the evidence that the kind of protection selected and used by the defendant was not the kind best calculated to prevent injury to the employes of defendant in case of the bursting of the water glasses, provided it used ordinary care in making the selection."

The plaintiff (defendant in error) was struck in the eye by a piece of glass thrown out by the explosion of the water glass of the engine upon which he was employed as fireman. The negligence alleged was that the glass was not properly guarded by a shield to prevent the flying of glass in the event of an explosion, such as the evidence shows frequently happened. The defendant had around its water glass one kind of shield which was extensively used and which was in its normal condition, its only defect, if there was one, being in its original construction. Other kinds of shields had been and were in use and experts differed in their opinions as to which was the best and safest. The very issue to be determined, therefore, was that correctly stated in the special instruction. The charges given by the court were such that the jury might have inferred the rule to be as laid down in that requested and refused, but this is not a sufficient answer to a request thus specifically defining to the jury the very proposition upon which the defense relied and grouping the facts by which it might be established. (Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 484; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 638; St. Louis S. W. Ry. Co. v. Casseday, 92 Texas, 526.)

In the case first cited this court said: "The trial court committed error in the charge given under the facts of this case in failing to instruct the jury that it was the duty of the railway company to use ordinary care to provide its engines with the best approved devices for preventing the escape of sparks and fire therefrom, and the court did not err in refusing the special charges which were asked. The charge of the court presents the law applicable to a case in which the question is the character of the spark arrester required by law, but under the facts of this case the charge given failed to submit an important issue—the question of diligence in the selection of the apparatus. The testimony in this case tended to prove that each of two different kinds of spark-arresters was used by railroad companies and each was considered by experienced railroad men as better than the other, which produced a condition in which it was necessary for the railroad company to make a choice between the two. Under this state of facts, it was the duty of the railroad company to exercise ordinary care—that is, such care as a man of ordinary prudence would exercise under like circumstances to select and use the better of the two, but, having used such care as the law requires, it can not be held that a failure of judgment honestly exercised in an attempt to discharge the duty would render the company liable."

Upon the authority of the Carter case it seems to be thought that the instruction now in question was erroneous, in that it required

only the exercise of ordinary care to select and provide a reasonably safe appliance, when its duty was to exercise such care to select the safest and best.    But this overlooks an important difference between the two cases.    The Carter case treats of the duty of railroad companies to be exercised to prevent the escape of fire from its locomotives for the protection of the property of third persons, and that duty is defined in the case cited as it is generally defined by the authorities.    In the present case we have to do with the duty of master to servant, which is as stated in the requested instruction.    (Galveston, H. & S. A. Ry. Co. v. Garrett, 73 Texas, 265; Gulf, C. & S. F. Ry. Co. v. Walker, 70 Texas, 129.)

It is also urged that the proposition in the charge is incorrect because it makes consistency with the efficient use of the water glass an element to be considered in making a selection of a shield for it. But we think there can be no doubt of this.    The water glass was used to show the condition, at any time, of the water in the boiler, so that danger of explosion of the boiler itself might be avoided.    It was important that the shield around the glass should be so arranged as to allow the water to be seen easily at all times by the engineer and fireman.    It would therefore be an imperfect view of the question to be considered in selecting the kind of shield to be used which would make it depend, alone, upon the consideration of danger to the servants from an explosion of the glass itself.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*