MERTON, Appellant, vs. MICHIGAN CENTRAL RAILROAD COMPANY, Respondent.

*September 18—October 8, 1912.*

*Railroads: Injury to passenger: Negligence: Customary appliances.*
*Door of toilet room: Failure to provide door check.*

Where the door to the toilet room in a passenger car was constructed and operated as such doors usually are, and there was nothing obviously dangerous in such construction or operation, failure to provide a door check to prevent it from closing suddenly was not such negligence on the part of the railroad company as renders it liable for an injury to a passenger who, as he was about to close the door, lost his balance by reason of a sudden swaying of the car, thrust his hand against the jamb of the door to save himself from falling, and was injured by the sudden closing of the door upon his thumb, caused by the same swaying of the car.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

Action for personal injury. On the 15th day of July, 1910, the plaintiff, having theretofore purchased transportation over the defendant's road from Chicago to Niagara Falls and return, boarded one of its trains at the latter place bound for Chicago. In the evening he entered the toilet room of the car. While in the act of turning around to close the door upon leaving the room, owing to a sudden swaying movement of the train he lost his balance, and, to avoid falling, thrust his hand against the jamb of the door next to the hinges. The swaying motion of the car caused the door to close, and the thumb of his right hand was caught in the space between the jamb and the door and was crushed and bruised.

The negligence charged in the complaint was that the defendant ran its train at such an excessive rate of speed as to cause it to lurch, and that it neglected and failed to provide the door of the toilet room with any spring or check to keep the same from shutting with great force and violence by reason of any unusual jerk or lurch of the train, and that it had no railing or contrivance of any nature which the plaintiff might have grasped in order to keep himself from falling, except the jamb of the door.

The jury returned a special verdict: (1) that plaintiff was injured on July 15, 1910, while a passenger on defendant's road (answered Yes by the court); (2) that the defendant was guilty of negligence in not providing the door to the men's toilet room with a door check; (3) that such negligence of the defendant was the proximate cause of plaintiff's injury; (4) that plaintiff was guilty of negligence that contributed proximately to produce his injury; and (5) damages $280.

On the coming in of the verdict plaintiff's counsel moved the court to change the answer of the jury to the fourth question of the special verdict from Yes to No and for judgment on the verdict thus corrected, and defendant's counsel moved the court to change the answer of the jury to the second ques-

tion of the special verdict from Yes to No and to strike out the answer of the jury to the third question of the special verdict and for judgment on the verdict as corrected. The court granted the motions of both parties to correct the verdict, and entered judgment for the defendant dismissing plaintiff's complaint upon the merits with costs, from which he appealed.

For the appellant there was a brief by *Merton, Newbury & Jacobson,* and oral argument by *M. A. Jacobson.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *J. G. Hardgrove.*

VINJE, J. It is claimed the trial court erred in changing the answer to question 2 from Yes to No, thus exonerating defendant from negligence in the construction and operation of the door. The evidence shows that it was made of mahogany; was twenty-two inches wide, six feet four inches high, about an inch and a quarter in thickness, and swung freely on the hinges. In other words, it was the kind of toilet-room door usually found in a Pullman or sleeping car. A door is one of the most common appliances of civilized man, and its mode of operation is understood by everybody. The door in question was somewhat below medium width. In other respects it did not differ in its construction and operation from the great mass of doors in common use wherever a door is needed. It is claimed, however, it should have had a door check, so that it would have closed automatically. Perhaps such a door check would have prevented the accident in question. But we do not understand, and fail to find from the evidence, that it is the office or purpose of a door check to prevent accidents of this or a similar nature. A careful consideration of the probable effect of a pneumatic door check might lead to the conclusion that it would cause more accidents to fingers on the hinge side of the door jamb than it would prevent. But be that as it may, the fact remains that

the door was constructed and operated substantially in the same manner that the great mass of such doors in all cars are constructed and operated, and that there was nothing obviously dangerous in such construction and operation.    Such being the case, defendant came within the rule that a person who uses a customary appliance which is in good repair and not obviously dangerous, in a usual and customary manner, is free from negligence.    Guinard v. Knapp-Stout & Co. Co. 95 Wis. 482, 70 N. W. 671; Innes v. Milwaukee, 96 Wis. 170, 70 N. W. 1064; Prybilski v. Northwestern C. R. Co. 98 Wis. 413, 74 N. W. 117; Yazdzewski v. Barker, 131 Wis. 494, 111 N. W. 689; West v. Bayfield M. Co. 144 Wis. 106, 128 N. W. 992; Bandekow v. C., B. & Q. R. Co. 136 Wis. 341, 117 N. W. 812; Jensen v. Wis. Cent. R. Co. 145 Wis. 326, 128 N. W. 982; Willette v. Rhinelander P. Co. 145 Wis. 537, 130 N. W. 853; McGinnis v. Northern P. Mills, 147 Wis. 185, 190, 132 N. W. 897, 133 N. W. 22.    This is in harmony with the rule requiring carriers of passengers to exercise the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such business under the same or similar circumstances, as reaffirmed in Ferguson v. Truax, 136 Wis. 637, 118 N. W. 251, for the evidence shows that ordinarily carriers of passengers do not equip toilet-room doors with door checks.    Of course if it can be shown, as it was in the case of Creason v. St. L., I.-M. & S. R. Co. 149 Mo. App. 223, 130 S. W. 445, relied upon by plaintiff, that the appliance is obviously dangerous, so that an ordinarily prudent man may reasonably anticipate that injury to another may probably follow as a result of its construction or mode of operation, then it falls within the exception stated in Jensen v. Wis. Cent. R. Co. 145 Wis. 326, 128 N. W. 982, and proof of custom of its use will not operate as a defense to the charge of negligence.    In the Creason Case the door knob was placed so close to the edge of the door that it could not be closed with the hand on the knob without the hand striking

the door casing.    The object of a door knob is to enable the door to be opened and closed by the use of the hand on the knob.    Obviously, therefore, if the knob is so close to the door casing that a finger between the knob and casing will be crushed or pinched when the door is being closed it constitutes an appliance in itself obviously dangerous—one from which injury is almost certain to result, as the hand must be placed on the knob in closing the door and usually cannot be withdrawn in time to avoid contact with the door casing if placed too near it.    Not so in the case at bar.    Ordinarily in using a door a person's hand does not come in contact with, or near to, the door jamb to which the hinges are affixed.    Only on account of some unusual occurrence or of some unforeseen combination of circumstances will it be placed there, and then the chance of its being caught as was plaintiff's hand is slight. Hence we conclude the trial court properly changed the answer to question number 2.    This conclusion renders it unnecessary to decide the question of plaintiff's contributory negligence, but we cannot forbear adding that we find nothing in the evidence to support the verdict on that subject.

*By the Court.*—Judgment affirmed.