# OCTOBER, 1930.

JUANITA ZINK, APPELLANT, v. LOUIS H. BOPP, RESPONDENT.—31 S. W. (2d) 563.

St. Louis Court of Appeals. Opinion filed October 7, 1930.

1178

*William W. Sleater, Jr.* for appellant.

*Walter Wehrle* and *George F. Heege* for respondent.

BECKER, J.—Plaintiff below brings this appeal from a directed verdict agaist her, and in favor of the defendant, in her action for damages for personal injuries alleged to have been sustained by her while seated in an automobile furnished by the defendant, an undertaker, while in charge of and conducting the funeral of one Andrew Linder, an uncle of plaintiff's husband.

Plaintiff's petition alleges that she was a mourner at the funeral in question, for the conduct of which plaintiff's husband had employed the defendant to take full charge thereof, and that "defendant entering upon the duties of such employment, undertook to perform the same with the customary degree of skill and attention usually exercised by such undertakers and funeral directors under like and similar circumstances, and to exercise therein ordinary care in the performance of such duties." The petition then alleges failure on the part of the defendant to exercise ordinary care for plaintiff's safety while conducting said funeral cortege to and at the cemetery where the said Andrew Linder was buried, and that by reason of the negligence of the defendant, his agents and servants, plaintiff was caused to suffer serious injury. The negligence of the defendant is alleged as follows:

"1. Defendant negligently failed to assist plaintiff at the cemetery to safely alight from the automobile furnished by defendant to carry plaintiff in the aforesaid funeral, when defendant, his agents and servants, knew or by the use of ordinary care could have known that plaintiff, because of her grief-stricken condition, was in need of assistance from said automobile, but instead allowed plaintiff, without any assistance from defendant, his agents and servants, when they could have rendered such assistance, to get out of said automobile as best she could, whereby, because of such negligent failure to assist plaintiff, plaintiff's right hand and fingers thereof were caught in the door of said automobile and injured as hereinafter set out.

"2. That the defendant negligently permitted the doors of the automobile in which plaintiff was riding to be promiscuously opened and closed by other mourners at the cemetery, without any supervision by the defendant, his agents and servants, when the defendant knew or by the exercise of ordinary care could have known that such unsupervised opening and closing of said automobile doors could result in injury to plaintiff.

"3. That the defendant negligently failed to warn plaintiff of any danger of injury to plaintiff by the opening and closing of the doors of said automobile in which plaintiff was riding by others than defendant, his agents or servants, when the defendant, his agents and servants, knew or by the exercise of ordinary care could have known that plaintiff could have been injured in endeavoring, because of her grief-stricken condition, to get out of or alight from said automobile at such aforesaid cemetery."

Plaintiff's own testimony was to the effect that the defendant conducted the funeral from his private chapel in Kirkwood, Missouri; that when the body of the deceased had been put into an automobile hearse, the defendant conducted plaintiff to an automobile furnished by him, opened the door for her to enter, steadied her, by holding her arm, as she got into the automobile, and directed her to sit on the back seat of the automobile, and next to plaintiff defendant placed her mother-in-law; that at the time plaintiff was assisted into the automobile by plaintiff she was in a grief-stricken condition, which condition was visible to defendant; that in the said automobile, on two folding seats in front of plaintiff, the defendant placed two other passengers who were acting as pallbearers. The minister who was to conduct the services at the cemetery in Belleville, Illinois, where the interment was to be had, sat with the chauffeur of the machine on the front seat; that when the hearse and the automobile in which plaintiff was riding arrived at the cemetery, the chauffeur left his place and went forward to the hearse and the two pallbearers riding in the machine with plaintiff got out of the car, one leaving by the doorway on the left and the other by the doorway on the right of the machine, leaving the said doors of the car standing open;

that neither the defendant nor any one representing him came to assist plaintiff or give her any instructions what to do about getting out of the car. Plaintiff thereupon undertook to get out of the automobile as best she could. In order to get out it was necessary that the two folding seats in front of plaintiff and her mother-in-law be pushed up out of the way, and plaintiff testified that in order to do that she had to grasp something with which to balance herself while she put the seats up and get out of the one in which she was seated. She testified that the only thing she could grasp was the jam of the open door on the right of the car, and that while she had her right hand on this door jam and was in the act of getting herself out of the seat, the door of the automobile closed on her hand, injuring her fingers. Plaintiff further testified that defendant Bopp "didn't know anything about it until it was all over."

Plaintiff's cross-examination discloses that the pallbearer who sat immediately in front of her was named Harry Krueger, and that when the automobile came to a stop back of the hearse at the cemetery in Belleville, Illinois, he opened the door on the right-hand side of the car and got out, leaving the door open, and that after the door had slammed upon plaintiff's hand it was he who opened the door whereby plaintiff's hand was released; that plaintiff did not see any one at, about, or near the door at the time it slammed excepting said Krueger. Plaintiff repeatedly stated she did not know who slammed the door.

"Q. Who opened the door that had been slammed against your finger? A. Well, Mr. Krueger opened the door to get out.

"Q. I know, but after it had been slammed against your finger Mr. Krueger opened it, didn't he? A. Yes, sir.

"Q. And he was the only one right there at the door? A. He opened the door.

"Q. He was the only one there, too, at the time he opened it, wasn't he? A. He was the only one I saw."

.  .  .  .  .  .

"Q. And there wasn't anybody else on the right-hand side of the automobile at the time he got out? A. I didn't see anybody.

"Q. And he slammed the door against your finger, didn't he? A. I didn't see him slam the door. I don't know who slammed the door. It just slammed."

Counsel for plaintiff, appellant here, states that the question involved on this appeal is whether or not, under the facts and circumstances of the case, the defendant, in the exercise of ordinary care, was required to assist plaintiff in alighting from the automobile furnished by him to convey her to the cemetery, or so to instruct her in alighting therefrom so that she could have left such machine in safety.

In support of the contention that plaintiff made out a case for the jury it is argued that since the defendant had undertaken to transport plaintiff as a mourner from his chapel to the cemetery and "was so solicitous of plaintiff's safety and welfare as to personally have assisted her into his automobile and to have directed her to her seat, and this, under the circumstances, being ordinary care, is it too much to require of defendant, in the full exercise of ordinary care, to see that plaintiff was assisted from such machine when arriving at the cemetery, either by himself or his driver or some one for him, or at least instruct the occupants to wait in the automobile until he could see that they, and especially this plaintiff, was given some assistance in alighting?"

On due reflection we have come to the conclusion that plaintiff's contention is without merit. In arriving at this conclusion we have in mind that no duty is imposed upon carriers of passengers to assist passengers in boarding or alighting from trains or cars.

In Yarnell v. Ry. Co., 113 Mo. 570, 21 S. W. 1, authorities are cited in support of the rule that it is not the duty of the employees of railway companies to assist passengers to alight *from* a train, and then specifically rules that "obviously the reasoning which denies the right of assistance to a passenger *from* a train would also deny it in getting *on* a train; the two cases cannot be distinguished in principle." [See also Hurt v. Ry. Co., 94 Mo. 255, 7 S. W. 1; Deskins v. Ry. Co., 151 Mo. App. 432, 132 S. W. 45; Young v. Ry. Co., 93 Mo. App. 267.]

In Crabtree v. Ry. Co. (Mo. App.), 273 S. W. 1104, a carrier was held not liable for injury to a passenger caused by the violent closing of a toilet door on the coach, due to the lurch of the train, in which case it was charged that to allow the door to remain open constituted negligence. And in other jurisdictions it has been held that a carrier is not guilty of negligence in simply leaving a car door open whereby injury results to a passenger. [See Hardwick v. Georgia R. & B. Kg. Co., 85 Ga. 507, 11 S. E. 832; Weinschenk v. Ry. Co., 190 Mass. 250, 76 N. E. 662; Brehm v. Ry. Co., 111 Kan. 242, 206 Pac. 868, 25 A. L. R. 1056; Merton v. Ry. Co., 150 Wis. 540, 137 N. W. 767.]

We quote the following from the opinion in the Young case, supra, 1. c. 274, 275:

"It is well settled that negligence cannot be presumed when nothing has been done out of the usual course of business, unless the course is improper, and that there must be some special circumstances calling for more particular care and caution to make liability. And where something unusual occurs which injuries plaintiff, but such unusual occurrence is not even inferentially the result of an unusual act of the defendant, and the defendant has, as far as he is

concerned, been pursuing his usual course, which has heretofore been done in safety, then the unusual occurrence is what is called an accident. [Guffey v. Ry. Co., 53 Mo. App. 462; Holt v. Ry. Co., 84 Mo. App. 443; Hysell v. Swift, 78 Mo. App. 39; Amer. Brewing Ass'n v. Talbot, 141 Mo. 674, 42 S. W. 679; Higgins v. Ry. Co., 73 Ga. 149; Laflin v. Ry. Co., 106 N. Y. 136.] By the application of this rule to the facts of this case, as we have just stated them to be, it becomes at once apparent that the occurrence which resulted in plaintiff's injury was no more than an accident for which there is no liability.''

If an undertaker conducting a funeral is to be held as for negligence for failing to assist an able-bodied young woman to alight from an automobile furnished by him to carry mourners to the cemetery, or because the undertaker may not have warned such woman that she might be injured if the doors of the automobile are opened and closed by others who are riding in the car with her, then it would require that a man be provided for such purpose for each automobile furnished by the undertaker for such funeral. In our view the exercise of ordinary care on the part of the undertaker imposes no such duty upon him.

The judgment is for the right party and should be affirmed. It is so ordered. *Haid, P. J.*, and *Nipper, J.*, concur.