## OSIPUK v. OCEANIC STEAM NAV. CO., Limited.

### No. 194.

Circuit Court of Appeals, Second Circuit.

April 17, 1933.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Morton L. Fearey and C. B. M. O'Kelley, both of New York City, of counsel), for appellant.

Single & Single, of New York City (George B. Warburton, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Antonia Osipuk, a Russian girl 16 years old, was a passenger on respondent's steamship Majestic bound from Cherbourg to New York. When attempting to enter the third-class lounge located in an island house on the C deck of the steamship forward of the bridge, she had the two middle fingers of her right hand crushed between the edge and frame of the door through which she was passing. According to her testimony, which was believed by the trial judge, the door slammed on her hand owing to the pressure of the wind, and caused injuries which necessitated the amputation of the end of one of her fingers and seriously impaired another. The door was not equipped with any automatic control to check its swing in opening or shutting, so that, when it met the force of the wind, there was nothing to restrain its movement.

Just prior to the accident, the passenger had come out of the door from the lounge to the deck, and she was seeking to return when she met with the injuries we have described. She grasped the handle of the door with her right hand to draw it toward her, but the wind made it difficult to open. After she had pulled it open, she stepped over the high sixteen-inch sill with her left foot and then about faced and proceeded to lift her right foot over and slide through the opening. In doing this she had swung into a position facing the inside of the door and manifestly could not keep it open against the pressure of the wind, if she was still to retain her hold on the outside knob. She accordingly shifted her hand from the knob to the inside face of the door and by holding it attempted to keep it open until she could lift

her right foot over the sill and completely pass through. But the pressure of the wind was too much for her, and the door closed and caught her fingers before she could execute the maneuver.

Upon the foregoing statement of facts the trial court held:

(1) That the steamship company was negligent in failing to supply an automatic control which would retard the motion of the door in closing, and that libelant's injuries were caused by that neglect.

(2) That the libelant was not guilty of contributory negligence.

(3) That the libelant had complied with the condition in her ticket requiring a written notice of claim within fifteen days after the termination of the voyage.

■ There was ample evidence that devices which retard the motion of doors in closing are in common use on ships. It was said by respondent's witnesses that the purpose of installing them was to keep doors closed rather than to protect passengers from injury in case the doors slammed from the pressure of the wind or the lurching of the vessel. But it cannot be denied that such devices tend to protect passengers from slamming doors, and Mr. Haight, an experienced marine surveyor whom respondent called as a witness, admitted that an automatic control might have afforded some safety to the libelant, and said: "If a door, which is not provided with one of the automatic devices, takes charge while the ship is rolling, it might do almost anything." Mr. Brazel, a marine engineer who testified for the libelant, said that an automatic door control was "a safety device to eliminate hazards which would be caused by * * * the rolling of the vessel, the wind, and features of that character," and referred to many vessels that were equipped with such devices. The outer doors of steamships are subject to special strain and pressure from the lurching of the vessels and the impact of winds and waves. They are necessarily heavy, and the high sills to prevent the entrance of water from the decks make it an awkward matter to pass through them. We think that the doors of a ship which open on the decks and are in constant use by passengers should be furnished with automatic controls, and that without such a control the door in question was unsafe. Howarth v. U. S. Shipping Board Emergency Fleet Corporation (C. C. A.) 24 F.(2d) 374. Such doors stand in quite a different category from the doors of railway cars. The latter have low sills which make

entrance and exit easy, and are subjected to no such pressure from winds and storms as doors opening on the deck of a ship. Nor is the lurching of a train at all comparable with that of an ocean going craft. Such decisions as Merton v. Mich. Cent. R. Co., 150 Wis. 540, 541, 137 N. W. 767, Chesapeake & O. R. Co. v. Hibbs, 142 Va. 96, 128 S. E. 538, 41 A. L. R. 1083, and Brehm v. Atchison, T. & S. F. Ry. Co., 111 Kan. 242, 206 P. 868, 25 A. L. R. 1056, if persuasive in cases of railroads, are not pertinent here. We think that the trial judge was entirely right in holding that the failure to equip with an automatic control such a door as the one in question, was an act of negligence and was the cause of the injuries of which the libelant complains.

An attempt was made to show that the wind was blowing in such a direction that it could not have caused the door to slam. But the libelant testified that the wind pressure was so great that she could hardly open it, and said that it did slam. Even according to respondent's proof, the wind was blowing practically head on and would naturally pass over the house in which the lounge was situated and strike the high bridge structure. We cannot say that the impact would not set up currents that would exert severe pressure on the door which libelant was seeking to enter and that her version of the accident was inherently improbable.

■ We see no merit whatever in the claim that the libelant was guilty of contributory negligence. She had passed through the door when going out on the deck and had every reason to suppose that she could return without risk. When she undertook to do this, she had to struggle to open and pass through the door. To bar recovery of her damages because she did not have her fingers in the safest place during the time when she was engaged in this struggle and had become overpowered by the force of the wind would seem the clearest injustice. In Howarth v. U. S. Shipping Board Emergency Fleet Corporation (C. C. A.) 24 F.(2d) 374, we said that a seaman in closing a door should keep hold of the door handle and not allow his hand to get between the door and the jamb; but here the libelant was not closing the door, but trying to hold it open in the best way she could do under the circumstances. While in this act she was suddenly overborne by the pressure of the wind.

The notice clause in libelant's ticket was complied with. There was testimony that her father gave a written notice of her claim

to respondent's agent in Detroit within the prescribed period of fifteen days after the termination of her voyage. While the testimony was not of the strongest, it was by a person apparently disinterested, and the trial judge found that it was uncontradicted and credible. We think it sufficient.

The decree is affirmed, with costs.