## HOUSTON & T. C. R. CO. et al. v. WERLINE.

No. 11639.

Court of Civil Appeals of Texas. Dallas. May 25, 1935.

Rehearing Denied June 15, 1935.

Baker, Botts, Andrews & Wharton, of Houston, and Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, for appellants.

Webb & Webb, of Sherman, for appellee.

LOONEY, Justice.

Evelyn Werline, appellee, sued the Houston & T. C. Ry. Company and the Texas & N. O. Ry. Company, appellants, to recover damages for personal injuries sus-

tained while a passenger on one of their trains, en route from Dallas to Sherman. Appellee, a young woman about 22 years of age at the time of her injury and totally blind, became a passenger on appellants' train at Dallas on January 17, 1932, and, when the train was nearing Sherman, she was seized with a paroxysm, becoming unconscious, slid or fell from the seat to the floor and, after a time, was taken from the car to a hospital at Sherman, when it was discovered that she had received a severe burn on her left leg, about 12 inches in length, extending from the calf to the heel.

Several grounds of negligence were alleged, but the one on which the case was submitted is, in substance, that appellants, their agents and employees, were negligent in having exposed an unguarded and intensely heated pipe, used in heating the passenger coach in which appellee was seated, with which she came in contact and was injured.

Appellants answered by a general denial, pleas of contributory negligence, unavoidable accident, and further that the passenger car in question was equipped with the vapor system of steam heating, a standard system in general use by railroad companies, being the most approved and efficient known; that the car was heated by steam delivered through a series of valves, etc., to pipes or radiators inside the car, the pipes extending parallel with and along the wall of the car near the floor, covered by a steel guard or shield over the entire space between the seats and extending under the seat cushions 2½ inches, and that the seats and pipes were arranged so as to prevent a person occupying the seat from coming in contact with the uncovered part of the pipes; that appellee was blind and subject to convulsions; and that shortly before the train reached Sherman on the occasion in question she was seized with a spell, had convulsions, became rigid and unconscious, and, notwithstanding efforts of passengers and employees to assist her, appellee worked herself off the seat onto the floor, with feet and legs beneath the forward seat, and, if burned, as alleged, the same was caused by her leg contacting the pipes beneath the seat while lying on the floor of the car.

At the conclusion of the evidence, after overruling appellants' request for an instructed verdict, the court submitted the case on special issues, in answer to which the jury found that appellee's injuries were not the result of an unavoidable accident;

that appellants were guilty of actionable negligence in having the steam-heating pipes equipped with insufficient guards; that appellee was not guilty of contributory negligence, as alleged; and that she was damaged, by reason of the injuries sustained, in the sum of $5,000, for which she obtained judgment and from which appellants appealed.

The evidence, in our opinion, shows that the vapor system for heating passenger coaches, used by appellants, was the standard approved type in general use the country over by railroad companies. The cars were heated by steam from the engine, delivered to pipes or radiators attached to the inside wall of the cars near the floor; two pipes, one immediately over the other next to the wall, and two similarly arranged paralleling the first two, forming a group of four, covered by a steel guard or hood 4½ inches wide, the outer edge of which extended downward 2½ inches. The guard or hood is also attached to the wall and extends over the pipes the entire space from seat to seat and 2½ inches under the cushions of each, leaving about 8 inches unguarded immediately beneath the seat. If extended to the floor, completely covering the pipes, the guard would have excluded the heat and defeated the purpose of the system. The evidence shows that a passenger, occupying a seat in the usual and ordinary manner, would have no occasion to come in contact with the heated pipes.

Based on the refusal of the court to direct a verdict in their favor, appellants urge two propositions, the first being that, as the undisputed evidence established the fact that the heating system used by them was of the standard approved type, generally in use for heating cars by railroad companies, and as no evidence was offered showing, or tending to show, that a different or safer method of heating cars was in use by any railroad company, or could have been provided, nor that the appliances on appellants' cars were defective or dangerous, nor that any person had received burns from pipes used in said system, and further the evidence showing that a passenger using the car in the usual and ordinary manner would not contact the pipes, that negligence was not proven and the court erred in refusing appellants' request for an instructed verdict.

Without assembling the evidence, we simply state our conclusion that the facts

arrayed, upon which the proposition just stated is based, were established. It being the duty of appellants, in selecting and maintaining a heating system, to exercise that high degree of care imposed upon carriers of passengers, the question arises, By what standard or test is the negligence, whether or not, of appellants to be determined? The case of Taylor v. White, 212 S. W. 656, 657, by the Commission of Appeals, was a suit to recover damages for injuries sustained by falling on a machine; the negligence alleged being the failure to place a guard rail around it. The court said: "The custom of others engaged in like business is not the absolute test of negligence, but where the undisputed evidence shows affirmatively, as it does in this case, that the defendant was conducting his business in accordance with the uniform custom of persons engaged in like business, it devolves upon the plaintiff, before he can recover, to produce evidence showing that such custom is negligent." To the same effect see City of Teague v. Radford (Tex. Com. App.) 63 S.W.(2d) 376; El Paso R. Co. v. Foth, 101 Tex. 133, 100 S. W. 171, 105 S. W. 322; Missouri, K. & T. R. Co. v. Carter, 95 Tex. 461, 484, 68 S. W. 159; Washington, etc., R. Co. v. McDade, 135 U. S. 554, 10 S. Ct. 1044, 34 L. Ed. 235; Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485; Union Pac. Ry. Co. v. Daniels, 152 U. S. 684, 14 S. Ct. 756, 38 L. Ed. 597; Canadian No. Ry. Co. v. Senske (C. C. A.) 201 F. 637; Merton v. Michigan Cent. R. Co., 150 Wis. 540, 137 N. W. 767, 768; 20 R. C. L. § 23, p. 30.

Merton v. Michigan Central R. Co., supra, was a suit by a passenger to recover damages for personal injuries inflicted by the closing of a door on his hand; the negligence alleged being the failure of the company to provide the door with a spring or check, and in failing to have a railing or contrivance which might have been used by plaintiff to keep from falling. Judgment for defendant was affirmed by the Supreme Court of Wisconsin, and during the progress of the discussion the court said: "But, be that as it may, the fact remains that the door was constructed and operated substantially in the same manner that the great mass of such doors in all cars are constructed and operated, and that there was nothing obviously dangerous in such construction and operation. Such being the case, defendant came within the rule that a person who uses a customary appliance which is in good repair and not obviously dangerous, in a usual and customary manner, is free from negligence."

Appellee contends, however, that her cause of action is not based upon the failure of appellants to have in use an approved standard system, but on their failure to have the steam pipes guarded so as to prevent contact with same, and that the circumstances indicated that the pipes were not guarded at the place where appellee was seated. The circumstances appealed to are the length and size of the burns on appellee's leg, being about 12 inches in length, extending from the upper part of the calf to the heel, and the four burnt places on her suitcase, corresponding, as appellee contends, to the four steam pipes on the side of the car. From these circumstances, argument is made that the burns on appellee's leg and the burnt spots on the suitcase were made by unguarded heated pipes, therefore that the court did not err in refusing to direct a verdict for appellants, but properly submitted the issue, and that the jury properly found the pipes to have been insufficiently guarded.

The witness, McDonald, testified that he examined the car in question about a year after appellee was injured, and found the heating equipment in good order. Mr. Fowler, foreman of appellants' car repairs, testified to his familiarity with the car, and that there had never been any change made in its heating apparatus. No direct evidence contradicted this testimony, and, in our opinion, it was sufficient to show that, when examined by McDonald in January, 1933, the heating apparatus was in good order, and that no changes had been made therein from the time of the accident to the date of his examination.

It must be assumed that appellee was not injured prior to being stricken with the paroxysm, and from this point the undisputed evidence is to the effect that, while in convulsions, she slid or fell from the seat to the floor with her feet and legs extended beneath the seat in front. The pipes there were exposed for a length of from 13 to 15 inches, in contact with which appellee's leg could easily have received the burns as described, and, in our opinion, the evidence forbids any conclusion other than that she was injured precisely in that way.

The suitcase was 24 inches in length, therefore could not have been placed lengthwise in contact with the pipes, as the distance from seat to seat was only 13 inches, but, being 13 inches from bottom to top, the suitcase could have been set

upon end and fitted into this place, but, even if so, it would have contacted only two pipes and shown only two burnt places. Aside from these circumstances, however, appellee testified that the brakeman, or whoever escorted her into the car at Dallas, set her suitcase down "lengthwise," she does not say where; but Miss Bush, a passenger and childhood schoolmate of appellee, seated beside her next the aisle, finding the suitcase in her way, moved it across the aisle, and later it was brought back and opened on the seat in front, for the purpose of examining some of its contents, was then closed, and returned across the aisle. So we think the conclusion inescapable that the suitcase was never in contact with the steam pipes, and was not burnt on that occasion, but may have received the burnt spots in appellee's room at the Blind Institute at Austin, as she testified the building there had radiators and was steam heated. Se we conclude that, as a question of law, no negligence was proven against appellants, and for that reason the court erred in not directing a verdict in their favor.

■ In their second proposition, appellants say that, even if it be conceded that they were negligent in the respect alleged, such negligence was not the proximate cause of appellee's injuries, in that the injuries received by her could not reasonably have been anticipated and were not the natural and probable consequence of the negligence alleged; therefore such negligence, if it existed, was not in law actionable; furthermore, that appellee's injuries resulted from an independent cause, in this, that, being seized with a paroxysm and becoming unconscious, she fell from the seat to the floor of the car, her left leg coming in contact with heated pipes beneath the forward seat, and in that way was burnt; therefore for these reasons the court erred in refusing to direct a verdict for appellants.

In one form or another we believe the material facts have heretofore been stated. The rule is axiomatic that, for negligence to be actionable, it must be the proximate cause of the injury complained of, and, to be the proximate cause, the injury must be the natural and probable consequence of such negligence, and ought reasonably to have been anticipated. Applying this rule to the facts under consideration, we do not think the events resulting in injury to appellee, or similar events, could reasonably have been anticipated. "Nothing short of prophetic ken could have anticipated the happening of the combination of events" that resulted in such an injury. The subject of anticipation or "foreseeableness" was discussed by Judge McLendon in the case of City of Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 670, 27 A. L. R. 927, who, after an exhaustive examination, made a very comprehensive and satisfactory statement of the doctrine, as follows: "In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission. [Citing authorities.] * * * Human beings in their common dealings with each other in society should be required to exercise some degree of deliberation or forethought. It would be unreasonable to require them, before doing or refraining from doing a particular act, to exhaust the field of speculation concerning every possible or conceivable consequence which might result from their conduct. It is just that one should be charged with the duty to anticipate those consequences which in the ordinary course of human experience might reasonably be expected to result therefrom, and therefore that he should be held legally responsible for those consequences. On the other hand, as stated in the Bigham Case [90 Tex. 223, 38 S. W. 162]: 'It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed.' * * * Manifestly the test of common experience would exclude that degree of prescience which would require resort to mere speculation in possibly conceivable results, as well as to 'prophetic ken.' * * * The rule of anticipation or foreseeableness is therefore one of practical application, and not of philosophical or metaphysical speculation in causation." To the same effect see Rincon v. Berg Co. et al. (Tex. Civ. App.) 60 S.W. (2d) 811; Laura V. Seale v. G., C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; G. C. & S. F. Ry. Co. v. Bennett, 110 Tex. 262, 219 S. W. 197; San Antonio & A. P. Ry. Co. v. Behne (Tex. Com. App.) 231 S. W. 354; Chesapeake & O. Ry. Co. v. Hibbs, 142 Va. 96, 128 S. E. 538, 41 A. L. R. 1083; Trinity & B. V. Ry. Co. v. McDonald (Tex. Com. App.) 208 S. W. 912, 914; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162.

The case of Trinity & B. V. Ry. Co. v. McDonald, supra, was an action by a passenger for damages for personal injuries sustained when raising the top of a toilet; the wind, rushing through the opening, brought a piece of metal, striking him in the eye, causing its loss. The ground of negligence alleged was that the railroad company provided an open toilet, instead of one equipped with a bowl, which would have prevented the injury. Plaintiff recovered judgment in the trial court, which was affirmed by the Court of Civil Appeals, 160 S. W. 984, but was reversed by the Supreme Court on writ of error, and judgment rendered for defendant. Discussing the case, the court said: "The question then is: Is there any evidence which authorizes a finding that the railway company, under the circumstances of this case, ought to have anticipated that, by reason of the manner of construction of the toilet, any person might suffer an injury similar in its nature to that of the plaintiff?" The court referred to and discussed the Bigham Case and other authorities, and then says: "We have, in the light of the principles which we have announced, read and re-read the entire statement of facts, and have concluded that there is no evidence in the record which authorized a finding by the jury of negligence on the part of the railway company in furnishing the open toilet and failing to provide a toilet with a bowl or pan at the bottom of the stool. It is true the accident would not have happened had the latter equipment been provided, but we are pursuaded that it never occurred to any railway company or any railway employees that the improved method of equipment was intended as a safety appliance, or that the use of the open toilet was attended with any danger. All the evidence is that the pan and (provision of) facilities for flushing were for sanitary purposes only." The court concluded by saying: "In the absence of some evidence tending to show that some such accident as occurred in this case had occurred, or that the circumstances were such as to have induced an apprehension that such might occur, we think that ground for anticipation of danger has not been shown."

So we conclude that appellee's injuries grew out of, and were solely caused by, the unusual and unanticipated situation produced by the paroxysm with which she was seized, and the events connected therewith, and that the alleged negligence of appellants, even if it existed, was in no legal sense a cause at all.

Appellee having failed to prove a case, we think the court should have directed a verdict for appellants; therefore the judgment below is reversed, and judgment is here rendered in their favor.

Reversed and rendered.

## On Rehearing.

In her motion for rehearing, appellee contends that "the court committed error in finding that the uncovered pipe under the seat was from 13 to 15 inches. The facts show that it was only 8 inches. This is material because the 8 inches of exposed pipe could not have caused the burn of 12 inches on appellee's leg."

We do not think there exists any ground for a misunderstanding or complaint in regard to the matter mentioned in this assignment, when the findings of the court are considered in connection with undisputed evidence. In our original opinion we found that: "The guard or hood * * * extends over the pipes the entire space from seat to seat and 2½ inches under the cushions of each, leaving about 8 inches unguarded immediately beneath the seat"; that is to say, the hood was not continuous, but under each seat lacked 8 inches of meeting. At another place we found that the guard or hood covering the pipes was 4½ inches wide, the outer edge of which extended downward 2½ inches, the evidence showing that the distance from the lower edge of the hood to the floor was 7½ inches, hence the pipes throughout the length of the passenger car were not shielded beneath the lower edge of the hoods, the length of which beneath each seat, as stated in the original opinion, was from 13 to 15 inches, which appellee's leg, in her prone condition on the floor, could have contacted and, in our opinion, did contact and was burned. However, we are now convinced that the length of the pipes beneath each seat was 13 inches, instead of from 13 to 15 inches.

After duly considering all grounds urged by appellee for rehearing, and finding no reason to change our decision, the motion is overruled.

Overruled.