## JOHN HIGHTOWER v. THOMAS H. GRAY.

Decided October 26, 1904.

**1.—Master and Servant—Duty to Furnish Safe Instrumentalities—Assumed Risk.**

It is the duty of the master to see that the instrumentalities and methods adopted by him satisfy a certain assumed standard of safety, in so far as he can do so by the exercise of ordinary care, and a failure to do so charges him with liability to the servant for injuries arising from such failure, unless the injuries arise from risks of which the servant has knowledge or is charged with knowledge.

**2.—Same—Inexperience of Servant.**

The servant's inexperience will not excuse ignorance of matters that can be seen, appreciated and understood by anyone.

**3.—Personal Injuries—Assumed Risk Precluding Recovery.**

One who was employed to make an excavation underneath a building for the purpose of being used as a cellar, the method being to tunnel through for a distance and knock down the overhanging rocks with a sledgehammer, is held to have assumed the risk of injury from falling rock and is thereby precluded from recovering.

**4.—Same—Supervision of Master—Obvious Danger.**

The fact that the servant was acting under the immediate supervision of the master does not relieve him from the assumption of risk where the danger to be encountered is so obvious that no ordinarily prudent man would have incurred it.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*C. L. Bass,* for appellant.

*Ogden & Brooks, W. H. Lipscomb,* and *Walter P. Napier,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellant sued to recover damages from appellee alleged to have accrued through the negligence of appellee, his employer, in ordering him to engage in excavating underneath a rock, which fell upon and injured him. Appellee answered charging contributory negligence and assumed risk. The court instructed a verdict for appellee.

Appellant swore that he applied to appellee, a laundryman, for work, and he employed him to make an excavation underneath his place of business, to be used as a cellar. Appellee told appellant how he wanted the work done; that he wanted him to tunnel through the ground and knock down the rock above his head with a sledge hammer. That he continued to do this for seven or eight days, and was engaged in breaking down the rock when a large piece fell on him and injured him. He thus describes the occurrence:

"I was probably digging the cellar twenty feet wide; each slug was five feet digging it up. I did that as a day's work and kept on working all through the day; go on; dug it all across and would block it off here and knock it down the next day and I would start yonder and

bring up that space until I carried the whole piece across. The last day I was there, I think it was about half-past 5 in the evening, on this corner [indicating] there was a great big piece of limestone rock right on the corner. He says to me, 'Come up here; I want you to dig this down;' I said 'All right, sir.' I stopped work over there [indicating] and came up here [indicating] and commences tunneling under there [indicating], and I had it about that high [indicating] up to the rock where I had tunneled under as far as the pick would let me dig, and all at once this piece broke from near the ceiling of the floor. The whole piece broke from under the ceiling of the floor; my wheelbarrow was right here, and shovel, and as fast as I got down I wheeled it out on the outside.

"The character of the rock looked like it had three different kinds— white limestone, gray limestone and then comes a white flint; fire would fly out of it. I call that flint rock. In that part of the rock, in digging, the lime, white limestone rock, mixed with gray rock, and when I was digging I could block out a piece sometime probably this big, and when you would strike it, it would chop off in pieces until you came to the solid rock, then I had to take the sledge hammer to it. I was not experienced in working in rock; had never dug in rock or tunneled in my life. Mr. Gray did not say anything about the rock business to me; nothing was said between Mr. Gray and myself in reference to my experience or inexperience in doing this kind of work. I did not know the rock was liable to fall on me; all I knew was to go ahead and do the work."

On cross-examination he stated: "I worked there seven or eight days, digging as he told me. I was breaking down rock, striking up under it, breaking it and jarring it so as it would break down; and I took it down, knocked up under it and the ledge of rock to fall down; and I had been doing that kind of work ever since I commenced. I had been doing this and carried it out in the wheelbarrow. It did not fall every time I would knock it; sometimes twenty licks before it would fall. He told me it would break if I struck it that way. I knew it would break if I knocked on it until it did break, and that was his orders. When I broke off a piece it was bound to fall. I say when I hit a piece under it and knocked it off, it came down; after it came down it is down and did not fall any more. The piece I was breaking off usually came right down; but the other part all came from under the ceilings, all that broke; and that rock, I wasn't knocking under that; I was picking under that, I was tunneling under that, when it came down. I was digging under it with a pick and the whole corner fell. This was the first time that it fell; a large piece about fourteen inches fell from under the ceiling; that was the whole south corner; it was as high as I could reach standing under it and have room all the way up to break to the top. I had never done any tunneling before. I did not know anything about the work; as I told you before I wanted

to do an honest day's work. I was tunneling under the rock when it fell on me, using a pick to dig with."

John Sutchiff, a stone contractor, stated that he had experience in making cellars; that in digging a cellar like the one in which appellant was injured, he would satisfy himself as to the character of material that was to be excavated before he would put a man to work underneath it; that he would not consider it absolutely dangerous to go underneath rock like that underneath which appellant was working when hurt, provided the top was firm and no powder had been used about the place. If the top was loose then he would use supports. He further stated: "The man working there ought to know more about whether pieces were coming off and the nature· of the stuff he is working with. I would depend upon the nature of the material. Another man standing by watching would know more of the nature of the material; ·the character of the material, whether rock was falling or whether rock was loose or not, is a matter that could be seen upon examination by one man as well as by another."

H. B. Salliway, a former contractor in rock, swore that he considered it unsafe for a laborer to work in the kind of material in question, without having supports.

R. F. Alexander swore: "I am a practical contractor and have done quarrying work in stone as such. If a man is tunneling in a concrete rock, he would be as able to see danger of rock breaking and falling as his boss. I think any man doing the work that plaintiff was, any man of good common sense, could determine whether that was safe to do that or not; if it is being done and a man is observing, seeing a loose rock falling occasionally, it would be dangerous; if he had any judgment and could see there was any loose rock at all, it wouldn't be necessary to put up anything at all; if I was doing that work I would watch it closely, and, if I saw in hammering underneath I had jarred .or broken the rock above, I would certainly take the precaution to guard against it,—but that would have to be observed constantly. The jury can determine that as well as I can. I can't say any more about it than any other ordinary man; that is a matter of common observation. A man of ordinary intelligence, if he was cautious, he might tell it as well as anybody else."

It is the duty of the master to see that the instrumentalities and methods adopted by him satisfy a certain assumed standard of safety, in so far as he can do so by the exercise of ordinary care, and a failure to do so charges him with liability to the servant for injuries arising from such failure. This liability, however, may be defeated by the existence of facts and circumstances which open the· way for the defenses based upon a knowledge on the part of the servant of the risks to which he is exposed by the negligence of the master. A servant assumes the ordinary risks incident to the particular service ·in which he has voluntarily engaged. The risks here referred to are those ordi-

narily connected with the particular work in which the servant is engaged and with which it will be assumed that he is acquainted. But there are other risks, which may not be incident to the business, which are obvious, that is such as are manifest to observation, whether they arise from the nature of the business, the manner in which it is conducted, or the use of improper or defective appliances. The same factors figure in both classes of cases, because both rest upon the basis that it is negligence to expose a servant to a danger of which he is ignorant, and it is not negligence to expose him to a danger of which he has knowledge. The liability of the master turns in both instances upon the knowledge of the danger by the servant, the knowledge being presumed in the one case and necessary to be proved in the other. If the servant actually knows or is charged with knowledge of the risks attending his master's work, he assumes such risks and can not recover for injuries arising from such risks. All that the servant can demand from the master is that he shall not be exposed to dangers unknown to him.

Proof of inexperience may under certain circumstances relieve a servant of the presumption that would be given to knowledge of risks arising from the prosecution of a certain business, unless the danger is so obvious that anyone should comprehend it. Numerous decisions establish the general principle that the servant's inexperience will not excuse ignorance of matters that can be seen, appreciated and understood by anyone. Not only does the law require of a man, no matter what his inexperience may be, that he exercise the senses given him by nature, but it imputes a knowledge to every adult, however inexperienced, of those things which arise from the common experience and observation of mankind. All servants are presumed to be acquainted to a certain extent with the properties of matter and the laws to which it is subject. Every man of sane mind is charged with the knowledge that fire will burn; that water will cause moisture and under proper circumstances will drown; that a stone thrown in the air or detached from an overhanging cliff must fall to the earth. Galveston H. & S. A. Ry. Co. v. Lempe, 59 Texas, 19; Texas & P. Ry. Co. v. French, 86 Texas, 96; Jones v. Railway, 11 Texas Civ. App., 39, 31 S. W. Rep., 706; Missouri K. & T. Ry. Co. v. Spellman, 34 S. W. Rep., 298; Brown v. Miller, 62 S. W. Rep., 547; Tucker v. National Inv. and Loan Co., 35 Texas Civ. App., —, 80 S. W. Rep., 879; Brown v. Lumber Co. (Ore.), 33 Pac. Rep., 557; Stuart v. Manufacturing Co. (Ind.), 43 N. E. Rep., 961; Brown v. Electric Ry. Co. (Tenn.), 47 S. W. Rep., 415; Naylor v. Railway Co. (Wis.), 11 N. W. Rep., 24; Carlson v. Water Co. (S. D.), 65 N. W. Rep., 419; Larich v. Moies (R. I.), 28 Atl. Rep., 661; Griffin v. Railway Co. (Ind.), 24 N. E. Rep., 888.

In the case last above cited, appellant was employed to dig gravel from under a stratum of clay four or five feet thick. He had been at work about three hours when the clay caved in on him and injured

him. He claimed that he was inexperienced and had not been warned of the danger. The Supreme Court of Indiana said: "In this case the appellant was engaged in digging a twenty-foot bed of gravel from under a thin stratum of common earth. He was bound to know that when the earth was undermined it would cave and fall in, and that if he was under it at the time it fell it would fall on him. We are bound to take notice of the law of gravity, and to know that a heavy object will not remain up in space without some support. The averments in the complaint that appellant did not know, and could not have known, that the earth covering the gravel would fall when undermined, can not prevail against the well known laws of nature. The appellant was bound to use the faculties with which he was endowed; and, had he done so, he would have known that at some time in the process of undermining the earth it would fall and endanger his personal safety."

The appellant must be presumed to be a man of at least ordinary intelligence, and although he may have had no experience in digging under rock, must be held to have known that if he got underneath an overhanging rock and struck it with a sledge hammer portions of it would necessarily fall, and if he was in the way he would be struck. He testified that he had been at the work for at least a week and that his constant blows had caused much of the rock to fall. Common sense would teach him that so long as he continued his efforts portions of the rock would continue to fall. He was in a better position to know this than was his employer, but he took his chances and must abide the results.

It does not matter that appellant was working under the immediate supervision of the master. As said by this court in Jones v. Railway Co., above cited: "Employes must be regarded as free agents, capable of protecting themselves from dangers that are as open and apparent to them as their employers; and where there has been a lack of ordinary care and prudence in guarding against such dangers the employer can not be held responsible. In other words, the servant of mature years, when he enters the service of the master, will be presumed to have retained the judgment and discretion common to the ordinary man; and he can not justify acts of contributory negligence on the ground that he acted under orders, when by the exercise of the ordinary faculties of the mind he could have seen the danger and have protected himself from the same." In all cases in which a servant has been held not responsible for assuming an unsafe position under the direct orders of his master, he was shown to have relied upon the superior judgment of such master. Where ordinary minds might differ as to the danger of certain action, and the servant acts in obedience to the order of a master upon whose superior judgment he relies, he would not be thereby cut off from recovering damages received in endeavoring to execute such orders, but he can not claim indemnity where the danger

to be.encountered is so obvious and apparent that no ordinarily prudent man would have incurred it. Labatt, Mast. and Serv., sec. 442.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

Whether appellant was striking the rock at the time with a hammer, or was tunneling underneath it with a pick, the danger was imminent and apparent. He had been engaged in breaking down the rock with a hammer and must have known that it had been loosened and broken by the blows and was liable to fall at any time, and especially so when he was jarring it by the blows of a pick. It was alleged and proved that appellant was striking under the rock, a piece of which fell. It does not matter that it was a pick that he was using instead of a hammer. Appellee was in a position where he could not see appellant at the time the rock fell. Appellant was in a better position to judge of the condition of the rock than was appellee, but he went to work and undermined it. He knew that the rock was liable to fall because he had been working in the same kind of material for several days, and pieces of it had been falling. Although appellee may have assured him that the rock when undermined would not fall, common sense and his own experience warned him that it would fall.

It is not alleged in the petition that the work was of such a character as to require experience to understand the dangers attendant upon it, and on the other hand the facts show conclusively that the dangers were open and palpable to any man of ordinary mental capacity. Inexperience in an adult person can not be made the shield for carelessness nor foolhardiness in the violation of the simple laws of nature, that anyone should understand. Railway Co. v. French, above cited.

The motion for rehearing is overruled.

*Overruled.*

Filed November 30, 1904.

Writ of error refused.