SAN ANTONIO & A. P. RY. CO. v. BLAIR.
(No. 5317.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 27, 1915. On Motion for Rehearing, March 3, 1915.)

1. MASTER AND SERVANT ⬳137 — INJURIES TO SERVANT—NEGLIGENCE OF MASTER.

A railroad company owes a duty to a switchman, sitting on a velocipede near its platform, to prevent other employés piling trunks thereon from casting one over on the switchman.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. ⬳137.]

2. PLEADING ⬳205—INJURIES TO SERVANT— ACTIONS—PETITION—GENERAL DEMURRER.

The petition by a switchman, injured when a trunk was thrown over a pile on him, need not describe the location of the platform, the reasons why he was sitting on a velocipede near it, or the minute circumstances surrounding the infliction of the injuries, in order to be good as against general demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 491–493, 495, 496, 498–510; Dec. Dig. ⬳205.]

3. MASTER AND SERVANT ⬳88—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Under Rev. St. 1911, art. 6649, substituting the doctrine of comparative negligence for contributory negligence with respect to employés of a railroad company, a servant need not be actually at labor when the injury is inflicted, but is entitled to the benefit of the statute if present and ready to respond to any call upon him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. ⬳88.]

4. MASTER AND SERVANT ⬳226 — INJURIES TO SERVANT—ASSUMPTION OF RISK.

An employé assumes only those risks arising out of the ordinary course of the master's business; hence a switchman, seated on a velocipede near a platform on which trunks were being piled, does not assume the risk of a trunk being thrown upon him, though he may be guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. ⬳226.]

5. NEGLIGENCE ⬳119—PROOF—VARIANCE.

Plaintiff must recover on the negligence pleaded.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 200–216; Dec. Dig. ⬳119.]

6. MASTER AND SERVANT ⬳265—INJURIES— PRESUMPTIONS—RES IPSA LOQUITUR.

Where a switchman, sitting near a station platform on which trunks were being piled, was struck by a trunk which either fell from or was thrown over the pile, the doctrine of res ipsa loquitur has no application.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. ⬳265.]

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. MASTER AND SERVANT ☞286—INJURIES TO SERVANT—EVIDENCE.**

Evidence of the negligence of a station porter in throwing trunks about the platform, one of which fell on a switchman, *held* insufficient to carry the case to the jury.

[Ed. Note.—For other cases. see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

On Motion for Rehearing.

**8. MASTER AND SERVANT ☞233 — INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.**

Where a switchman, not actively engaged in his duties, took his position near a platform practically under a tier of trunks which were being piled, and one of them fell and hurt him, he was guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 684–686, 701–742; Dec. Dig. ☞233.]

Appeal from District Court, Karnes County; F. G. Chambliss, Judge.

Action by H. A. Blair against the San Antonio & Aransas Pass Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellant. C. C. Harris, of San Antonio, C. L. Bell, of Karnes City, and M. J. Arnold, of San Antonio, for appellee.

FLY, C. J. This is a suit for damages alleged by appellee to have accrued by reason of the negligence of appellant's porter in throwing a trunk upon appellee. The cause was tried with a jury, and resulted in a verdict and judgment in favor of appellee for $20,000.

[1, 2] The first assignment of error is overruled. The petition stated a cause of action, and was not open to attack by a general demurrer, however subject it may have been to being assailed by special demurrers. No railroad company is authorized to have trunks thrown by its porter on a switchman, or any one else, and the petition clearly stated that the porter negligently threw the trunk on appellee. It is a singular proposition that a railroad company owes no duty to a man sitting on a velocipede near its platform, if he happens to be a switchman. The case of Dobbins v. Railway, 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, cited by appellant, has no applicability whatever to the facts of this case. Appellee was not called upon to give his reasons for sitting close to the platform. He may have had no reasons for such action, but that did not authorize appellant to kill or maim him. All the facts necessary to a recovery were alleged in the petition, at least fully enough to withstand the attack made through a general demurrer. Appellee was not called on to describe the location of the platform, nor the minute circumstances surrounding the infliction of the injuries upon him.

[3] Until 1909, it was the well-settled rule in Texas that the doctrine of comparative negligence did not prevail in any case, but that if the plaintiff was guilty of contributory negligence he could not recover, no matter how negligent the defendant may have been. That rule has been abrogated by statute, however, in so far as applied to the employés of any railroad company. As between the railway companies and their employés, the doctrine of comparative negligence is applicable. Rev. Stats. 1911, art. 6649. In that law it is provided that contributory negligence, on the part of a railroad employé, shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé. Under the provisions of that statute the relation of master and servant must exist, and the injuries must be inflicted while the servant is in the service of the master; but this does not mean that the servant must be actually at labor when the injury is inflicted, but if he is present and ready to respond to any call upon him by the master, he would be in the employment of the master, and would be within the terms of the law as to fellow servants, as to assumed risk, and as to contributory negligence. Mere cessation from labor for a time would not destroy the rights of the employé under the statute. Railway v. Scott, 71 Tex. 703, 10 S. W. 298, 10 Am. St. Rep. 804; Railway v. McHale, 47 Tex. Civ. App. 360, 105 S. W. 1149; Railway v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745; Railway v. Pennewell, 50 Tex. Civ. App. 541, 110 S. W. 758.

Appellee was in the employ of appellant as a switchman, and at the time he was injured he and his foreman were sitting on a velocipede, near the platform, waiting for a car to be unloaded, which was to be handled by them. He was in the actual service of appellant at the time, and is entitled to the benefits of the provisions of the statutes mentioned in regard to employés.

[4] Even if the law of assumed risk had been applicable to appellee, the facts in this case do not raise the issue of assumed risk. A switchman could not assume the risk of having trucks thrown on him, because assumed risk arises out of the ordinary course of business of the master. Appellee could not have entered the employment of appellant with the knowledge that trunks were thrown on people who stood near the platform. The facts might have raised the issue of contributory negligence, but not of assumed risk. As said by this court in Railway v. Foth, 101 Tex. 133, 100 S. W. 171, 105 S. W. 322, which was adopted by the Supreme Court:

"Assumed risk refers to a general course of action in connection with the master's way of doing business and the appliances furnished; contributory negligence refers to the question as to whether the servant acted prudently in connection with a certain matter that arose for his consideration at a certain time and place.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The first is an intelligent choice; the latter is carelessness."

The charge complained of in the third assignment of error correctly stated the law; for, if appellee was injured through the negligence of appellant, he was entitled to damages, because the contributory negligence of appellee was not a bar to his recovery as provided in article 6649. The court in a succeeding paragraph applied the law of comparative negligence. In special charges, requested by appellant, the jury were instructed, in effect, that appellee could not recover anything if he was guilty of contributory negligence, which was more favorable to appellant than the law permits.

As before stated, the special charges requested by appellant and given by the court were more favorable to appellant than they should have been, and they were, in effect, the same as the charge the refusal of which is complained of in the sixth assignment of error.

[5-7] The allegations of negligence in the second amended original petition are:

"Plaintiff further alleges that the defendant had intrusted one of its employés, known as the station porter, with the duty of handling and placing trunks upon said platform near which the plaintiff was sitting; and said porter, while engaged in undertaking to pile trunks on the platform near which the plaintiff was sitting, and while endeavoring to throw a trunk on top of other trunks, so handled said trunk as to cause it to fall upon and against the plaintiff, causing him to be injured and damaged as set forth in this petition; and the acts of said station porter in so handling said trunk as to cause it to fall upon the plaintiff, was negligence upon the part of this defendant, and such negligence by the defendant was a direct and proximate cause of the accident, injuries, and damages to plaintiff set forth in this petition."

The only negligence alleged, it is readily seen, is that of the porter "while endeavoring to throw a trunk on top of other trunks," and it is an elementary proposition that to entitle appellee to a recovery there must be proof that the act of the porter "while endeavoring to throw a trunk on top of other trunks" caused the trunk to fall on appellee. The trial amendment is not properly verified, and the theory embodied therein was not given in charge to the jury.

When the accident occurred, appellee and his foreman were seated on a railroad velocipede near the platform where trunks were being piled. Appellee had his back to the platform and was conversing with the foreman. Appellee was about one foot from the platform. He testified:

"The first thing I knew of something coming, I heard a racket, and looked over my shoulder just in time to see this negro grab at this trunk he had threw over the other trunk."

He assumed in this connection, as he did in other parts of his testimony, that the trunk was thrown; but he did not see the porter throw the trunk. With his back to the trunks, it was, of course, an impossibility to see the porter throw the trunk, and when he turned the negro was endeavoring to catch the trunk to prevent it from falling. It is true that in other parts of his testimony appellee stated:

"The station porter threw the trunk over, and struck me on the back, and knocked me down, and injured my back, and broke my leg."

This is utterly inconsistent and irreconcilable with his testimony giving the details of the accident. He does not claim to have seen the negro throw the trunk, but only saw him "grab at the trunk." At that time the force, whatever it may have been, that propelled the trunk had been exerted, and appellee could not have known what it was. The foreman corroborates appellee as to the sound of the falling trunk, but no one corroborates him as to the porter being near the trunk when it fell. The foreman saw no one there. Only an instant of time could have elapsed from the time that the trunk commenced falling until it struck appellee. In fact, it was so short a time that appellee could not jump out of the way. The foreman did jump out of the way, and was not struck, but saw no negro. The evidence fails to show that the porter threw the trunk, or endeavored to throw it, on top of the other trunks; the only evidence as to the porter tending to show that he was endeavoring to catch a trunk, which, for some reason not shown, was falling from its position. The unreasonableness of the testimony appears from appellee's own statement, as follows:

"After having detailed this occurrence as I have to the jury, and being situated as I said I was with my back to the platform talking to Mr. Grasshoff, and knowing about the trunks being behind me and piled as I say they were, at 4 o'clock in the morning, and after I heard the rattling of trunks coming, I still tell this jury, on my oath, that I saw that negro with his hand on that trunk throwing it over where I was."

The platform was four feet high, and the trunks were piled up between where appellee was sitting with his back to them and any man behind them. It was in proof that a person behind only one trunk on the platform could not be seen by a man sitting on the velocipede standing near the platform.

Our former opinion was written on the hypothesis that there was evidence showing that the porter threw the trunk on appellee, but on a thorough reconsideration of the facts we are of opinion that there was no such testimony, but the evidence on its face showed that it was an impossibility for appellee to have seen the porter throw the trunk. The whole case hinged on the fact that the trunk was thrown, and the mere fact that the porter was seen grabbing at the trunk did not show that he threw it before he grabbed at it. That he may have seen it begin to slip, and endeavored to catch it, is just as reasonable as that he threw the trunk on top of the others with such force as to cause it to slide down and injure appellee.

If it be admitted that the trunk slipped when the porter endeavored to put it on top of the other trunks, in what did his negligence consist? It was not alleged that he knew that appellee was sitting in dangerous proximity to the trunks. Appellee was just as cognizant of the danger in sitting near and below the platform on which trunks were being piled as the porter, and should have known of their propensity for slipping. Any man of ordinary intelligence ought to have known that it was dangerous to sit below and near trunks piled upon one another. Was it negligence to endeavor to put the trunk upon the others, and was it negligence to try to stop it when it started to fall? Unless the doctrine of res ipsa loquitur could be applied in this case, the evidence fails to show negligence. That doctrine cannot be invoked in this case.

The evidence showed that the trunks were piled two and three deep on the platform; that it was 4 o'clock in the morning; that appellee was sitting with his back to the platform where the trunks were piled; that the platform was four feet high; that it was impossible to see a man behind the trunks from the position of the velocipede occupied by appellee; that the trunk had started to fall before appellee turned his head; and this is all the evidence in the case to show negligence. The evidence of the porter showed that he was not near the trunks at the time of the accident, and that the trunk that fell had been in the position from which it fell for some time. A number of passengers were near the scene of the accident, but none was called as a witness, and appellee was not corroborated as to the position of the porter. There was no evidence that the porter was leaning over the trunk when seen by appellee, the only position in which witnesses testified he might have been seen by appellee.

This court fully understands the position in which appellate courts are placed in regard to the verdict of a jury, and they have faithfully sustained that position; but when the assertions of an injured party cannot be based upon facts and are in the face of reason, there is nothing sacred about the verdict, and it should be set aside.

The motion for rehearing is granted, the judgment of affirmance heretofore rendered will be set aside, the former opinion withdrawn, and the judgment of the trial court will be reversed, and the cause remanded.

## On Motion for Rehearing.

We have fully considered the motion for rehearing and find no reason to cause this court to change its opinion. The porter testified, and his testimony was not contradicted, that he heard the trunk slipping and ran over to where it struck appellee. Appellee does not allege that the trunks had been piled up in a negligent manner, but that while the porter was endeavoring to throw a trunk on top of other trunks he so handled the trunk as to cause it to fall on plaintiff. In his motion for rehearing appellee states that the evidence discloses that the trunks were already stacked along the edge of the platform back of him when he sat down, and that the porter was not placing trunks along there when appellee sat down, but was placing them on another part of the platform. Appellee contends that afterwards the porter brought the trunk which fell upon him to that part of the platform where appellee was sitting, and threw or lifted it up on another trunk, then pushed it over to the edge, and it fell off upon appellee. It is undisputed that the trunks at the edge where appellee sat were piled two or more high, and therefore appellee's statement that there was still a row of trunks left after the one fell on him may be said not to be a contradiction of the porter's testimony that when he looked over to the place from which the trunk had fallen he saw that there was a broken place in the line of trunks that was there; a vacant place, like a tooth missing out of a row of teeth when one is gone. This very significant piece of testimony is denied by no one.

While much is said in the motion for rehearing about the trunk being thrown or lifted upon another trunk and shoved over, and the bump caused thereby being what attracted appellee's notice, neither he nor Grasshof, or any other witness, testified to hearing any bump. The first thing that attracted their attention was a rattling or sliding sound, which was so alarming that according to Grasshof's testimony he supposed it was a trunk falling, and both he and appellee instantly tried to jump away from the danger. If appellee's attention was attracted by a bumping sound, or by the scraping of the trunk as it was pushed over the other trunk or trunks, and he saw the force applied to the trunk which caused it to topple over, he could have jumped and escaped injury. Appellee testified that he did not jump forward, but "raised" up to jump forward, and looked over his shoulder just an instant before the trunk struck him. It is evident that the sound which alarmed him so closely preceded the trunk hitting him that he was unable to jump after hearing it, and it was a physical impossibility for him to know what caused it to fall. It was a three-cornered trunk, and there was considerable vibration of the platform. If he heard a trunk being bumped upon others right back of him, and looked around instantly, as a prudent man would have done, he could have jumped in ample time. If he heard only what he testified he heard, namely, a rattling or sliding sound, which so closely preceded the injury that he was unable to do more than rise up, he could not tell whether it was one of the trunks already stacked which fell upon him, or a trunk then being placed on the others. The

porter testified that the trunks laid flat were stacked as high as they could get them, and that the trunks standing on end were one or two high, with some light pieces thrown on top; that the trunk which fell took up a good deal of space, but was not heavy; that it took up so much space, because it was in the shape of a piano box; that it was about 2½ feet high and 2 or 2½ feet wide and about 4 feet long. He also testified that the first trunks were put on the depot end of the platform (the end where appellee sat); that they stacked them two or three high; that they placed stacks of them back even with the board, and made another row and stacked them all the way back. There is no contradiction of this testimony. It accords with the beliefs expressed by other witnesses. Appellee testified that he thought there were two or three rows where he was sitting.

It would be indeed a strange thing for the porter to attempt, after completing his outside row of baggage by piling it as high as he could, to take a large, badly shaped trunk, and put it on top of the outside row right where appellee sat, instead of beginning at one of the ends if he thought the row would stand another tier being put upon it. The testimony shows that appellee's theory cannot be sustained; but it must be that the trunk which fell upon him was one of those which had been piled up before he sat down upon the velocipede, and that, not having alleged negligence in piling them up, he cannot recover.

We did not reverse the judgment because one part of appellee's testimony was inconsistent with the other, but because his testimony in regard to the cause of the trunk falling is contrary to the physical facts, and it cannot be true that he knew whereof he testified. We cannot shut our eyes to the responsibility resting upon us, and affirm judgments upon testimony which cannot be of any probative value, when viewed in the light of the admitted physical facts, which show such testimony to be merely the opinion of the witness, and an opinion which must be erroneous. Every one that observes such matters at all knows the tendency of trunks to slide and slip and fall when piled upon one another. The evidence fully showed this tendency, and appellee admitted that he knew of the danger of the position he assumed. He swore:

"I knew that if a trunk thrown upon top there got loose from the person handling it, or the trunk became dislodged from the vibration or any natural cause, that they would fall on me. I knew that when I sat down there. * * * While they were unloading these trunks, they were rolling them around by hand, that vibrated the platform some, and made some

noises, so I could hear it. I heard it behind me."

Trunks were piled along the edge of the platform at the time appellee chose his position near the trunks. Porters were engaged in piling trunks on top of the others. Appellee knew that, and admits that he knew the danger of a trunk falling under such circumstances. He testified:

"The trunks were all piled there, and I saw them when I sat down, and they were piled up back of it. I don't remember if it was two tiers of trunks, or one tier of trunks. I don't remember how high they were piled."

Grasshof, who was with appellee, testified that the trunks were piled along the platform where he and appellee sat down. He swore positively that there was no man behind the trunk when it fell. The physical facts clearly indicate that appellee could not have seen any one throw a trunk into the vacancy between the piles of trunks, and unless the trunk was thrown the case was not made out. All that appellee swore was that he saw a hand grabbing at the falling trunk.

[8] The evidence shows that appellee deliberately chose a place to take a seat which he knew was dangerous. He was not acting under instructions from his foreman, but he acted voluntarily. He knew the trunks were piled near the edge of the platform; he knew other trunks were being added to them; he knew that the trunks might slip from vibrations of the platform; he knew that the vibrations were taking place; and yet in the face of this knowledge he chose, of all others, this place of danger in which to sit and engage in a conversation. He could not justify such conduct, even though he had been ordered by his foreman to assume the position he did. The danger in this instance was just as apparent as in those cases in which men dug under overhanging cliffs. Reason and common sense should have caused him to appreciate the danger of sitting underneath a platform where trunks were piled one upon another. Appellee confessed that he knew that the trunks might fall. Hightower v. Gray, 36 Tex. Civ. App. 674, 83 S. W. 254.

Appellee was not in a place provided for him by his master, but in one he had sought, while not engaged actively in his work. He voluntarily chose a place that he knew was dangerous, and was guilty of contributory negligence. Brooks v. Joyce, 127 Iowa, 266, 103 N. W. 91; Tanner v. Wickliffe Coal Co. (Ky.) 108 S. W. 351; Miller v. Moran, 39 Wash. 631, 81 Pac. 1089, 1 L. R. A. (N. S.) 283, 109 Am. St. Rep. 917; Dolstrom v. Newport Min. Co., 165 Mich. 309, 130 N. W. 643.

The motion for rehearing is overruled.