TURNER et al. v. McKINNEY.  (No. 8293.)*

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 18, 1915.  Rehearing Denied Jan. 15, 1916.)

1. MASTER AND SERVANT ⟨⟩286—ACTION FOR INJURY—SUFFICIENCY OF EVIDENCE.

On evidence, in a railroad employé's action for injuries when the sides of a ditch he was working in caved in on the grounds of defendant's negligence in having it dug so deep and narrow without propping the sides, that defendant knew it was dug through filled land but failed to warn and instruct plaintiff, who did not know it, that defendant knew the work was dangerous but did not warn plaintiff of the danger, and that defendant was negligent in not inspecting the ditch to discover the probability of a cave-in, held, that there was no error in overruling defendant's motion to instruct a verdict.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⟨⟩286.]

2. MASTER AND SERVANT ⟨⟩278—ACTION FOR INJURY — SUFFICIENCY OF EVIDENCE — KNOWLEDGE OF DANGER.

Evidence, in such action, held to justify a finding that the dangers incident to the work in which plaintiff was engaged were known to defendant and its foreman and were not known to plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ⟨⟩278.]

3. MASTER AND SERVANT ⟨⟩101, 102—MASTER'S DUTY—SAFE PLACE TO WORK.

A master is bound to exercise ordinary care to furnish a safe place for his servants to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ⟨⟩101, 102.]

4. MASTER AND SERVANT ⟨⟩205 — ASSUMPTION OF RISK—RELIANCE ON CARE OF MASTER—RAILROADS.

A servant is not required to inspect the place where his master has put him to work, but has the right to assume that the place furnished by the master is safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. ⟨⟩205.]

5. TRIAL ⟨⟩260 — INSTRUCTIONS — REQUESTS COVERED.

In a railroad employé's action for injury from a cave-in of the sides of a ditch in which he was working, the refusal of an instruction, that if the dangers and risks incident to the work were obvious to a person of ordinary intelligence and prudence situated as plaintiff was at the time of his injury he could not recover, was not error, where the court charged that plaintiff while in defendant's employ assumed the risks ordinarily incident to the services

which he undertook and such risks as he knew or by the exercise of ordinary care should have known of, and that if plaintiff knew of the dangers of his work, or should have known of them, he could not recover.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ⟨⟩260.]

6. TRIAL ⟨⟩194—INSTRUCTIONS—WEIGHT OF EVIDENCE.

A requested instruction which was on the weight of the evidence was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. ⟨⟩194.]

7. TRIAL ⟨⟩260—REQUESTED INSTRUCTIONS—GIVEN INSTRUCTIONS.

The refusal of a requested instruction was not error, where the law involved therein was sufficiently given in the court's main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ⟨⟩260.]

8. DAMAGES ⟨⟩208—INSTRUCTIONS—MENTAL ANGUISH AND PHYSICAL PAIN—EVIDENCE.

Evidence, in a railroad servant's action for permanent injury to his collar bone and abdomen, held sufficient to justify a submission of the question of his future mental anguish and physical pain.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 54, 64, 68, 132, 144, 145, 205, 220, 533, 534; Dec. Dig. ⟨⟩208.]

9. DAMAGES ⟨⟩50—ELEMENTS—MENTAL SUFFERING.

Mental suffering will be implied from illness or injuries accompanied by physical pain, and may arise from a sense of discomfort or inconvenience.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 100, 255, 257–259; Dec. Dig. ⟨⟩50.]

10. WITNESSES ⟨⟩344—IMPEACHMENT—CIVIL ACTION.

A witness in a civil action cannot be impeached by requiring him to testify to discreditable acts on his part having no material bearing on the issues involved in the case.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1120, 1125; Dec. Dig. ⟨⟩344.]

11. WITNESSES ⟨⟩344—PARTY TO CIVIL SUIT AS WITNESS—IMPEACHMENT.

In a railroad employé's action for personal injury, where plaintiff, on cross-examination, testified that he had left another state looking for work and not because he had been indicted or had jumped bond, the exclusion of the testimony of a private detective, who would have stated that plaintiff told him he left the other state in the nighttime after he had gotten away from two officers, one of whom was the sheriff, and that a whisky charge was then pending against him, offered in support of defendant's claim that plaintiff was not injured at all, and upon whether he was able to labor, and whether he was the kind of man who would seek work, and whether since his injury he had sought work, together with an instruction not to consider any of the testimony under those issues, was proper.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1120, 1125; Dec. Dig. ⟨⟩344.]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by J. S. McKinney against Avery Turner and another, receivers of the Ft. Worth & Rio Grande Railway Company. Judgment for plaintiff, and defendants appeal. Affirmed.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

Lockett & Rowe, of Ft. Worth, for appellants. Ben M. Terrel and W. C. Prewitt, both of Ft. Worth, for appellee.

BUCK, J. Suit was brought by appellee, J. S. McKinney, against the appellants, for damages in the sum of $30,000, for alleged injuries received by him while engaged in laying tiling in the bottom of a ditch some 28 inches wide and 13 feet deep, in the course of construction in appellant's roundhouse in its west yards near the city of Ft. Worth. The ditch was constructed for the purpose of draining a pit or excavation underneath the repair track in the roundhouse. The ditch was some 60 feet long and extended beyond the roundhouse. Plaintiff alleged negligence upon the part of the defendants in the following particulars: (a) In having the ditch dug so deep and narrow without having the sides thereof sloped or propped and braced; that the dirt through which the ditch was dug was filled ground and more liable to cave in than ordinary ground; that such facts were known to defendants, but were unknown to plaintiff, and could not have been known by the exercise of ordinary care, and that defendants failed to warn and instruct plaintiff, as was their duty. (b) That the defendants' foreman and vice principals knew, or by the exercise of ordinary care ought to have known, that the work upon which plaintiff was engaged was dangerous, and it was their duty to instruct plaintiff of the danger existing and how to avoid the same. (c) That defendants were guilty of negligence in failing to brace and sheath said ditch, in failing to furnish suitable material for such purpose, in failing to properly inspect said ditch as it was dug, for the purpose of discovering the probability of its slipping or caving in, and in permitting plaintiff to work in a place known, or which should have been known by them in the exercise of ordinary care, to be dangerous. (d) In assuring plaintiff prior to said injuries that there was no danger of the ditch caving in on him and hurting him. Plaintiff further alleged that at the time of the injuries complained of he was doing nothing which could make, or did make, any change in the nature or character of said ditch, or which affected the risks or danger from the caving in or slipping of dirt in said ditch. Plaintiff's injuries were caused by the caving in or slipping of the sides of the ditch, and consisted, as alleged, and in part proven, in a broken collar bone, fractured ribs, injuries to his abdomen, etc. The case was submitted to the jury on a general charge, and, from a verdict and judgment in favor of the plaintiff in the sum of $1,500, the defendants appeal.

Appellants' first assignment is directed to the refusal of the court to peremptorily instruct the jury in favor of the defendants because:

"(a) The undisputed facts adduced in evidence upon the trial of this cause show that, at the time the plaintiff sustained his injuries, the defendants, receivers of the Ft. Worth & Rio Grande Railway Company were engaged in interstate commerce, and that, at the time of the injuries alleged by plaintiff to have been sustained by him, plaintiff, J. S. McKinney, was engaged in interstate commerce. (b) Because, under the undisputed facts adduced upon the trial of this cause, it is shown that the plaintiff, J. S. McKinney, assumed the risk of injury and the injuries sustained by him while employed in working in the ditch which caved in upon him and injured him. (c) Because no acts of negligence are established by the evidence against these defendants."

Defendants alleged in their answer that, at the time of plaintiff's injuries, both plaintiff and defendants were engaged in interstate commerce, which allegation plaintiff, in his supplemental answer, denied. The court charged the jury that at the time of the injury, if any, both plaintiff and defendants were engaged in interstate commerce. While we question whether the facts conclusively showed, if at all, the state character of the employment at the time of plaintiff's injuries, yet in view of the full charge given by the court, both on assumed risk and contributory negligence, we cannot see that it would make any difference in so far as the appellants are concerned, whether the service in which plaintiff and defendants were engaged at the time of the accident was interstate or intrastate in its character. Appellants' first proposition under this assignment is that:

"Where appellee's own evidence shows that he had been engaged with others at various times over a period of two weeks in constructing a ditch 60 feet long and of an average depth of 12 to 13 feet, and that for two days prior to his alleged injuries he and a companion had been engaged in digging in the bottom of such ditch and laying tiling therein, and that he was so engaged immediately before and at the time of the accident to him, and that the portion of the ditch in which he had been working the day he was injured, and at the time he was injured, was 13 feet deep and of an average width of 26 to 28 inches, the walls of same being of black earth and of the depth stated, and that same were not sloped; and where the undisputed evidence shows that his foreman upon discovering that appellee and his companion were working in a portion of said ditch, of which the walls and sides were not sloped, told appellee to stay out of same until the sides were sloped, and that, after appellee and his companion got out of the ditch, other employés were put to work sloping the sides of the ditch, but that appellee, after his foreman left, re-entered said ditch, and while working in same was injured as alleged by him— he assumed the risks of such injuries, and there can be no recovery by him for damages sustained thereby."

[1, 2] In the first place, both plaintiff and Jeff Musick, who was working with plaintiff in the ditch at the time of the injury, deny that they were told by the foreman to stay out of the ditch until the sides were sloped, or that they were told by the foreman, or any one else, that it was dangerous. Plaintiff testified:

"We had a foreman of that gang. His name was J. H. McCarver, and W. A. Cresswell was

the straw boss. * * * The foreman, John Mc-Carver, saw this ditch twice a day and some times more while it was being dug. * * * Bill Cresswell stayed there with the gang the majority of the time, looking right down there in the ditch where the work was being done; he kept right in after us all the time. * * * The night before this accident happened, Mr. McCarver, the foreman, told Jeff Musick in a conversation I heard that as we approached the concrete wall: 'I think it will be all right; the concrete wall will make it safer there.' He says, 'There ain't any danger in it whatever.' * * * The way I came to be in this ditch the day I got hurt, Cresswell, straw boss, told me to go in there and lay this tile. * * * When I was told to go into the ditch, I was told to get in there and lay the tile and get through with it. * * * It is not a fact that Cresswell, one of the foremen, came out there to where Jeff Musick and I were working in that ditch and told us to get out of there and cool off, and then went back and told some of the boys to slope the sides of that ditch where we were working. Both Musick and I did not get out of that ditch at any time and cool off, and I don't know it to be a fact that we went back into the ditch and stated that we were not afraid of it and went to work against the instructions of the foreman in charge of the work, and that then the ditch caved in on me. That is not so. I never heard that neither."

It is true that Cresswell testified:

"On that day I was working out there, and I came into the roundhouse where McKinney and Musick were at work, and they were down in the ditch digging. They had dug this ditch back after I left, and then, when I came in there, they had got too far back in the ditch and they had not sloped it like I would have left it when I was there myself, so I says, 'Jim, you and Jeff come out.' I says, 'You are warm, and you get some water and rest until these boys slope this back,' and I turned around and goes back to my work on the outside, and in about 30 minutes there was a negro ran out there, and he says, 'Boss, one of your men in yonder is covered up head and ears,' and I went right back in there and went to work. I found it was McKinney that was covered up. He was one of the fellows I had told to come out of there until the sides were sloped."

So that it will be seen, upon the question of warning and instruction by the foreman to plaintiff and Musick to come out of the ditch for the purpose of having the sides sloped so that they might be safer, there is a sharp conflict in the evidence. Moreover, there is sufficient evidence to support the conclusion that plaintiff did not know of the character of the soil, that it was filled-in soil, and did not know of the danger from caving, while defendant's foreman did know. Upon this issue the plaintiff testified:

"While this ditch was being dug, I put some crossings in at Holloway, and I unloaded some timbers and worked out here in the old Ft. Worth & Rio Grande building, putting in some shelves, and I lined up some bridges and done lots of work like that—surfacing them. * * * I had never helped to dig but one ditch before this one. I had helped to dig a ditch, but it was only about 3½ or 4 feet deep. It was there in the west yards and on the outside of the roundhouse. * * * I did not know the difference between the natural earth and filled-in dirt when I was digging in this ditch; I did not know the difference in the soil when I saw it. I had not had any experience along that line. I expect I would know it now if I was digging in a ditch. * * * It was not very light in this ditch in which I was injured. This roundhouse was round on one side, and on the south side of the roundhouse were doors where the engines came in on the tracks, and they were all closed up except the one where the blacksmiths work in there, and the windows were all closed down. There were plenty of windows on one side of the roundhouse, but they were dirty and closed down. The roundhouse was covered over."

Cresswell testified:

"I knew about this dirt caving in on Freeman, and I knew it was dangerous. * * * Sure I did. As long as I stayed there, whenever it began to cave in, I sloped it. * * * In order to secure the safety of the ditch, we first put some boards across the ditch, and the dirt slid under that, and we saw that the brace would not hold it, and we taken the boards out."

From the testimony quoted, and from other testimony of like import, we are unable to conclude that the jury were not justified in finding that the dangers incident to the work in which plaintiff was engaged were not known to the defendants and to their foreman, or that they were known to the plaintiff. There is some testimony in the record to the effect that filled-in dirt, and especially black dirt, is likely to cave. In addition to the presumption, perhaps justified, that the defendants had knowledge that the ground within the roundhouse was filled-in dirt, and that there was danger of its caving because of its character, there is ample evidence, as has been noted, that their foreman knew such to be the case and that appellee did not know it. Appellants cite us to the cases of Railway v. French, 86 Tex. 96, 23 S. W. 642, Ft. Worth Stockyards Co. v. Whittenburg, 34 Tex. Civ. App. 163, 78 S. W. 363, by this court, Hightower v. Gray, 36 Tex. Civ. App. 674, 83 S. W. 254, and other cases holding, in effect, that when the dangers and hazards incident to an employment are open to the observation of any man of reasonable intelligence, and such dangers and hazards are as open to the observation of the servant as to the master, the servant cannot recover for injuries sustained while engaged in such work. But we do not believe that the facts in this case bring it within that class.

[3] A master is bound to exercise ordinary care to furnish a safe place for his servants to work, and it is not their duty to inspect the place so furnished. In City of Austin v. Gress, 156 S. W. 535, where the plaintiff, an ordinary laborer, was injured while tamping dirt around a pipe in a ditch four feet wide and twelve feet deep by a caving in of the side of the ditch, and the evidence was conflicting as to the character of earth, and it was shown that walls dug by the city in the immediate neighborhood without supporting walls did not cave, and the work of digging the dirt was superintended by the city's chief engineer, and it was shown that he had not considered the dirt in danger of caving, and that plaintiff had no experience in such work, it was held that the danger was not so obvious as to charge plaintiff with the as-

sumption of the risk. In Gordon Jones Construction Co. v. Lopez, 172 S. W. 987, the San Antonio court held that where plaintiff, while assisting in taking down a wall, stepped on a plaster of paris cornice or molding which broke off, precipitating plaintiff to the earth below, the danger of stepping on the cornice was not, as a matter of law, as open and apparent to plaintiff as to defendant's vice principal, nor so apparent that a ·man of ordinary prudence would not have stepped on it. See, also, Railway v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264, where a switchman on the first day of his employment in the yards of defendant had his foot caught in a frog and was killed. It was held that a recovery should be sustained. Therefore we hold that the trial court did not err in overruling defendant's motion to instruct a verdict for the defendants.

What we have hereinabove said disposes also of the second assignment, which complains of the action of the court in refusing defendants' special charge No. 1 instructing a verdict for the defendants.

The third specification of error is directed to the refusal of the court to give the following special charge tendered by defendants:

"You are further instructed that if you believe from the evidence that the plaintiff had equal opportunity with the defendants, their agents and servants, to observe and discover the risks and dangers incident to the work upon which plaintiff was engaged, under the facts, circumstances, and conditions existing at the time plaintiff alleges he received his injuries, then you are instructed that the plaintiff is not entitled to recover herein, and you will return a verdict in favor of the defendants."

[4] As before observed, the servant is not required to make inspection of the place where his master has put him to work, but has the right to assume that the place the master has furnished is safe. In Railway v. Hannig, 91 Tex. 347, 43 S. W. 508, the Supreme Court says:

"We understand the law to be that, when the servant enters the employment of the master, he has the right to rely upon the assumption that the machinery, tools, and appliances with which he is called upon to work are reasonably safe and that the business is conducted in a reasonably safe manner. He is not required to use ordinary care to see whether this has been done or not. He does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks, or in the ordinary discharge of his own duty must necessarily have acquired the knowledge. Bonnet v. Railway Co., 89 Tex. 72 [33 S. W. 334]; Ry. v. Bingle, 91 Tex. 287 [42 S. W. 971]."

Therefore the third assignment is overruled, and likewise the fourth, which raises questions already considered and disposed of in this opinion.

[5] The fifth assignment is urged to the refusal of the court to give the following instruction:

"You are further instructed as the law of this case that if you believe from the ·evidence that the dangers and risks incident to the work upon which plaintiff was engaged were open and obvious to a person of ordinary intelligence and prudence, situated as plaintiff was at the time of the injuries alleged by him to have been received, the plaintiff is not entitled to recover, and you will return a verdict in favor of the defendant."

In the court's charge the jury were instructed that plaintiff, while in the employ of defendants, assumed such risks as were ordinarily incident to the service which he undertook, and such risks as he knew of, or by the exercise of ordinary care in the discharge of his duties he would have known of, and they were further instructed that if they found and believed from the evidence "that plaintiff, J. S. McKinney, received the injuries complained of in his petition, and in the manner described therein, yet if you further find that he knew of the dangers, if any, with such work at said time and place, or by the exercise of ordinary care for his own safety he could have known of such dangers, then you will find for the defendants." The court further charged the jury that, while it was the duty of the defendants to exercise ordinary care to furnish to plaintiff a reasonably safe place in which to perform the work assigned to him, yet if they found and believed from the evidence that immediately before and at the time of plaintiff's injuries, if any, he was then doing some act which affected the safety of said ditch, then in such event they would find in favor of the defendants. We believe the charge quoted sufficiently covered the issues presented by the special charge requested, and therefore overrule the fifth assignment, and likewise the sixth and seventh, which complain of the refusal of special charges; the matters therein, in so far as applicable to this case, we believe to be sufficiently covered in the main charge of the court.

[6, 7] We overrule the eighth assignment because we believe the special charge No. 7 requested by the defendants, the refusal of which error is assigned, to be on the weight of the evidence. Moreover, we think the law as involved therein is sufficiently given in the seventh paragraph of the court's main charge.

[8] The ninth assignment complains of the submission to the jury of the question of mental anguish and physical pain and authorizes a recovery therein, inasmuch as claimed by appellants in said assignment, the undisputed facts fail to show that he will suffer in the future either physical pain or mental anguish, or that he had before the trial suffered any mental anguish. The evidence is ample to show that the plaintiff was permanently injured in his abdomen, and in his clavicle, or collar bone, and that there was a marked and permanent deformity of his clavicle. Dr. Kingsbury testified:

"He has a broken collar bone, and he has quite a deformity there. The bone overlaps to the extent of about one inch and a half. In other words, the collar bone is shortened that much, and he has a beginning rupture of the left side. * * * He will be unable to do any lifting or sustained work of any character be-

cause he will tire more easily. The anatomical relations are disturbed, and consequently he will be like a man walking on a short leg, with one leg shorter than the other. He will tire more easily doing heavy work of any kind. * * * The broken ends of the bones come in contact with the soft deep tissues of the neck, and consequently he cannot raise his shoulder like a normal man could."

Dr. Kibbie testified:

"As far as the clavicle is concerned, he has recovered in a measure, depending on the usefulness of the shoulder; but he has not completely recovered, because he has a degree of disability."

Plaintiff testified:

"I was certainly suffering pain when I was taken out of the ambulance. I was hurting all over. My collar bone was broken and my back hurting at that time. I was almost dead. I did not know much about it for a day or two. I remained conscious after they took me out of the ditch until they went to put me in the ambulance, and then I turned so sick I did not know hardly what I was doing at that time. My side was hurt, and my ribs were fractured pretty bad, and I suffered from that and suffered with my lungs, and spit up blood for a while. I suffered with my side and my collar bone. It was my abdomen that hurt me. * * * I was not well when I left the hospital at Sherman. I was then suffering in the side and shoulders, or in the abdomen down here; that was hurting me when I came back to Ft. Worth. * * * I passed blood from my bowels for about a couple of weeks and spit up lots of blood—lumps of blood. I have not been able to do any hard physical labor. I have tried to."

[9] We think the evidence above quoted sufficiently shows physical pain and mental suffering up to the time of the trial, and that the plaintiff will probably suffer mental anguish and physical pain in the future. Mental suffering will be implied from illness, or injuries, accompanied by physical pain. Railway v. Johnson, 43 Tex. Civ. App. 147, 95 S. W. 595; Railway v. Currie, 64 Tex. 85; Railway v. Simpson, 81 S. W. 353. Mental suffering may arise from a sense of discomfort or inconvenience. Railway v. Harder, 36 Tex. Civ. App. 151, 81 S. W. 356. Further, the testimony of the physicians justifies the conclusion that not only will the plaintiff in the future be incapacitated to do certain kinds of labor incident to his former employment, but that he will experience inconvenience, discomfort, and pain in the attempted use of his arm and shoulder. Moreover, it will be noted that there is no assignment raising the question of the excessiveness of the verdict, and, in the view of some of the court, this would be necessary in order for appellants to take advantage of the question raised by the assignment under discussion. But we think the question is sufficiently answered by what we have said above, and we do not find it necessary to base our action in overruling the assignment upon the last expressed view, concerning which there is some disagreement among us.

On cross-examination plaintiff testified that he had left North Carolina looking for or hunting work, and that he did not leave there because he had been indicted or jumped a bond. Whereupon defendants introduced the witness Smissen, a private detective, and asked him the following:

"Now, I will ask you, Mr. Smissen, what statement, if any, Mr. McKinney, the plaintiff in this case, made to you with reference to how and his reasons for leaving North Carolina?"

To which question plaintiff's objection that it was immaterial was sustained by the court. It is urged that, if Smissen had been allowed to answer, he would have stated that McKinney told him that he left the state of North Carolina in the nighttime, that he had gotten away from two officers in that state, one of whom being the sheriff, and had swum a river and gone over into the state of Tennessee, and that a whisky charge was then pending against him. Defendants offered said testimony in support of their contention that the plaintiff was not injured at all, and upon the question as to whether or not he was able to labor, and upon the question whether or not he was the kind of a man who would seek to secure work, and upon the question as to whether or not since his injury he had sought work or employment. The court instructed the jury verbally as follows:

"You are instructed that you will not consider for any purpose the testimony of the plaintiff given before the jury yesterday afternoon, to the effect that he left North Carolina looking for, or hunting work, or a job, and to the effect that he did not leave there because he had been indicted, or that he had jumped a bond, in order to escape the officers. You will not consider that for any purpose."

To the refusal of the court to admit the testimony of Smissen to the above effect and to the verbal instruction given, appellants' tenth and eleventh assignments are directed.

[10, 11] A witness in a civil action cannot be impeached by requiring him to testify to discreditable acts on his part having no material bearing on the issues involved in the case. Railway v. Burleson, 157 S. W. 1177; Moody v. Rowland, 46 Tex. Civ. App. 412, 102 S. W. 911; Loftus v. Maxey, 73 Tex. 242, 11 S. W. 272; Railway v. Johnson, 83 Tex. 628, 19 S. W. 151. Nor do we think that such character of testimony would be admissible, over objection, when offered by a witness other than the one sought to be discredited or impeached. While the appellants argue that this testimony was admissible on the grounds stated, yet we think it was too remote for such purpose, and that the court did not err, either in refusing the admission of the testimony, or in instructing the jury not to consider any of the testimony which had in fact been introduced upon these issues.

Finding no prejudicial error, the judgment of the trial court is hereby in all things affirmed.